## JAMES G. GRACEY, Appellant, v. CITY OF ST. LOUIS.

### Division One, July 3, 1908.

1. **OFFICER: How Determined.** One method of determining what is an office is to go to the written law creating the position and determining its duties, and discern from it the legislative intent as evidenced by its words.

2. ———: ———: **Charter: Deputy Elevator Inspector.** The city charter defined the term "officers" to "include all persons holding any situation under the city government or its departments, with an annual salary or for a definite term of office," and gave the municipal assembly power by ordinance to create any office it deemed necessary; and the ordinance authorized the mayor to appoint an inspector of boilers and elevators, and authorized said inspectors "to employ, by and with the consent of the mayor, five deputy inspectors," and provided that the inspector and his deputies "shall hold their office for the term of four years, and be paid for their services the sum of $1,200 each per annum," and required them to give a bond in the sum of $5,000, and the charter provided that "any appointed officer may be removed by the mayor or council for cause." Plaintiff was appointed deputy inspector, and the appointment approved by the mayor, but his written appointment is silent on his term. He filed an oath and gave the required bond, and served for something over three years and was then summarily dropped, without any hearing or the assignment of a cause, and now sues for his salary for the balance of a four-year term. *Held*, that he was, by the plain language of the charter and ordinances, an officer, and could be removed only in the way provided by the charter.

3. ———: ———: **General Definition: Employ.** Under the general definition of a public officer, plaintiff was an officer of the city, and that, too, although the word "employ" is used in the ordinance authorizing the inspector "to employ five deputy inspectors." The word "employ" is of wide meaning, and taken with its context in this case conveys the idea of selecting and intrusting with a public duty.

4. ———: **Removal.** A public officer of a city cannot, under the charter of St. Louis, which provides for removal by the mayor or council for cause, be removed during his term and stripped of his official emoluments, except for cause and on due process of law—that is, on due charges made and due hearing had on due notice given.

5. ——: ——: **Salary.** A public officer is entitled to his salary during his term of office, independent of his performance of its duties.

6. ——: ——: **Abandonment.** Mere silence of the deputy officer on being told by his chief that when the head of the department is changed he also goes, or a mild protest on his part when he is relieved of the duties of the office by the assignment of another thereto, and his failure to institute mandamus to compel his reinstatement or *quo warranto* to test the other's title, do not amount to an abandonment of the office or to an acquiescence in his dismissal.

7. ——: ——: **Limited by Bond.** A person appointed to an office having a fixed term is entitled to the entire term, unless removed 'for cause, etc. The fact that the written appointment did not define his term but used general language and the fact that his bond recited that his official term ended before the end of the term fixed by law, did not affect his right to the entire term. The law cannot be added to or pared down by any recital in the bond.

8. ——: ——: **Settlement: Other Employment.** By accepting payment of all moneys due him up to the time of his wrongful dismissal and by thereafter accepting other employment alleged to be incompatible with his duties as a public officer, the officer did not surrender his right to be paid the legal salary pertaining to the office for the remainder of the term. By accepting what was due him an officer does not jeopardize his right to the salary for the unexpired part of the term of which he was wrongfully deprived, and he is not required to be idle in order to preserve his right of action.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

REVERSED AND REMANDED (*with directions*).

*James R. Van Slyke* for appellant.

(1) The court erred in declaring that under the law and the evidence plaintiff was not entitled to recover against the city, because plaintiff's appointment was for a definite period, and at an annual salary; therefore he was and became under the charter and or-

dinance provisions of the city an officer and entitled as such and could be dismissed only for cause. State ex rel. v. Police Commr., 14 Mo. App. 300; affirmed by Supreme Court, 88 Mo. 144; State ex rel. v. Brown, 57 Mo. App. 199; State ex rel. v. Walbridge, 62 Mo. App. 199; State ex rel. v. City, 90 Mo. 19; State ex rel. v. Walbridge, 119 Mo. 383; State ex rel. v. Hawes, 177 Mo. 387; State ex rel. v. Longfellow, 93 Mo. App. 370; State ex rel. v. Walbridge, 153 Mo. 197; State ex rel. v. Carr, 3 Mo. App. 6; City of Houston v. Estes, 79 S. W. 848; City of Houston v. Lubbock, 79 S. W. 851; City of Houston v. Johnson, 79 S. W. 1199; Everitt v. Swan, 57 Pac. 716; Kendall v. Raybauld, 13 Utah 226; Larson v. St. Paul, 86 N. W. 459; Andrews v. Portland, 79 Maine 484; Emmett, Mayor v. New York, 128 N. Y. 117; Stradler v. City of Detroit, 13 Mich. 346; Commissioner v. Johnson, 124 Ind. 145; Dillon Mun. Corp. (3 Ed.), sec. 235. (2) Plaintiff, by reason of term, salary and duties was a city officer. State ex rel. v. Maroney, 191 Mo. 531; Mechem's Public Offices and Officers, secs. 2-10, 38, 386, 454; Throop, Public Officers, secs. 2, 187, 304; Municipal Corporations, Abbott, secs. 598-9, 617-8, 621. (3) Plaintiff being a city officer and not having been removed for cause, he is entitled to be paid his salary for the unexpired term. State ex rel. v. Walbridge, 153 Mo. 197.

*Chas. W. Bates* and *Benj. H. Charles* for respondent.

LAMM, J.—On the 18th of February, 1905, plaintiff sued for $483.33, for his unpaid official salary from June 9, 1903, to November 4th of that year, with interest from the last date, as deputy inspector of boilers and elevators in the city of St. Louis under due appointment. The theory of his petition is that, by virtue of his appointment under the charter and ordinances

of said city, he was an officer for a term of four years from date of appointment, November 4, 1899, at an annual salary of $1,200. That on the 9th day of June, 1903 (without cause and unlawfully), he was dismissed cr discharged, in the sense that he was denied his right to perform his official duties and refused his salary for the remainder of his term.

At the close of the evidence, the trial court gave defendant a peremptory instruction. Thereupon plaintiff took a nonsuit with leave. His timely motion to set it aside was denied. Thereupon, he brings the case here because the Supreme Court has jurisdiction "in cases where a county or other political subdivision of the State is a party," etc. (sec. 12, art. 6, Const.), it having been uniformly held that, in a constitutional sense, a city within a county is not a "political subdivision of the State," but that the city of St. Louis, by virtue of sections 20, 22 and 23 of article 9 of the Constitution, was such political subdivision. [Kansas City v. Neal, 122 Mo. 232.]

The pleadings may be passed, with the general remark that they were broad enough in averment to admit evidence on all points raised here. The tendency of the material oral testimony, and those provisions of the charter and ordinances of the city of St. Louis vital to the controversy, will sufficiently appear in connection with the determination of questions made by counsel pro and con.

I. Was plaintiff an officer? It is insisted he was an officer of the City of St. Louis, subject only to removal for cause during his term; *contra,* by defendant, that plaintiff was a mere employee subject to removal at pleasure. The question lies at the door, and is of the very essence, of the controversy. Oral testimony and official records and documents were put in evidence **on** the point, but the following admissions of the answer will take the place of some of it, viz.:

"Defendant . . . . admits that the plaintiff was appointed a deputy inspector of boilers and elevators on or about the first day of November, 1899, by William J. Castanie, who was then Inspector of Boilers and Elevators in and for the defendant city, by and with the consent of the Mayor of the said city, and that on or about the 4th day of November, 1899, the plaintiff qualified by giving a bond in the penal sum of five thousand dollars, and that he entered upon the performance of his duties as such deputy inspector and continued to perform the same up to and including the 12th day of June, 1903."

Plaintiff's written appointment was silent on his term. It was directed to the Mayor and in general terms appointed him deputy elevator inspector and bears the Mayor's approval. In the "official oath book" of defendant city appears plaintiff's oath, narrating that he was appointed "to the *office* of elevator inspector of the city of St. Louis" and that he possessed "all of the qualifications prescribed for *said office*" and would support the Constitution of the United States, of Missouri, the charter and ordinances of the city and would faithfully demean himself *"in said office."* It was shown that his bond was approved by the Mayor and the city council, and certified by the city counselor to be in due form. The following clause of it is pertinent to the question now up: "Now, if the said James G. Gracey shall faithfully, skillfully and impartially *perform all the duties of his said office* and shall fully account for and pay into the city treasury all moneys received by him as said deputy inspector of boilers and elevators, then this obligation to be void; otherwise to remain in force."

Plaintiff put in and relies on the following charter and ordinance provisions:

Section 43, article 4, charter of St. Louis:

"Sec. 43. *Oath of City Officers—Bond of Same.—*

Every officer of the city and his assistants, before entering upon the duties of his office, shall take and subscribe to an oath or affirmation before some judge or justice of the peace or the register, that he possesses all the qualifications prescribed for his office by the charter; that he will support the Constitution of the United States and of the State of Missouri, and the charter and ordinances of the city of St. Louis, and that he will faithfully demean himself in office; and every officer of the corporation when so required by law or ordinance, shall, within fifteen days after his election or appointment, and before entering upon the discharge of the duties of his office, give bond to the city in such sum as shall be designated by ordinance, conditioned for the faithful performance of his duties, and that he will pay over all moneys that belong to the city as provided by law. If any person elected or appointed to an office shall fail to take and subscribe such oath or affirmation, or give bond as herein required, his office shall be deemed vacant. For any breach of the condition of said bond, suit may be instituted thereon by the city or by any person in the name of the city of St. Louis, for the use of such person or persons.

"*Officers Defined.*—The term 'officers,' whenever used in this charter, shall include all persons holding any situation under the city government or its departments, with an annual salary or for a definite term of office; and the term 'fiscal officers,' whenever used, shall include all persons engaged in any relation in the collection and disbursement of the city's money."

Section 45, article 4, charter of St. Louis:

"Sec. 45. *Power of Assembly to Create Offices.*— The assembly shall have power, by ordinance passed by a vote of two-thirds of the members elect of each house, to create any other office which it may deem necessary, and to provide for the manner of filling the same."

Section 5, article 4, charter of St. Louis:

"Sec. 5. *Suspension or Removal of Officers.*— Any elected officer may be suspended by the Mayor and removed by the council for cause, and any appointed officer may be removed by the Mayor or council for cause. In either case the Mayor shall temporarily fill the vacancy, except as hereinafter provided."

Section 2196, McQuillin's Municipal Code of St. Louis:

"Sec. 2196. *Inspector of Boilers and Elevators— Appointment and Qualifications.*—The Mayor shall appoint, by and with the consent of the council, an inspector of boilers and elevators, who shall be a practical mechanical engineer, and competent to test and inspect steam boilers and elevators and all steam-generating apparatus under pressure. [Ord. 18375, amendment—w.]"

Section 2197 of same:

"Sec. 2197. *Five Deputy Inspectors to be Appointed—Qualifications.*—Said inspector of boilers and elevators is authorized to employ, by and with the consent of the Mayor, five deputy inspectors, who shall possess the same qualifications as the inspector of boilers and elevators and perform the same duties. [Ib.]"

Section 2199 of same:

"*Tenure of Office.*—The Inspector of Boilers and Elevators and his deputies and clerk shall hold their office for the term of four years, and until their successors are duly appointed and qualified."

Section 2214 of same:

"*Deputy Inspectors to Devote Entire Time—Salaries.*—The deputy inspectors shall devote their entire time to the duties of their office, and be paid for their services the sum of twelve hundred dollars each per annum."

Defendant read into the record many ordinance

provisions. We consider the following somewhat bear upon the point in hand:

"Sec. 2212. *Bonds of Deputy Inspectors.*—The deputy inspectors appointed under this chapter shall give a bond in the penal sum of five thousand dollars with the same conditions as required of the inspector of boilers and elevators, and subject to the approval of the Mayor and council."

"Sec. 2229. *Inspection of Elevators—All Elevators to be Regularly Inspected.*—It shall be the duty of the inspector of boilers and elevators to regularly inspect all elevators used for the purpose of carrying either passengers or freight; to see that the same are in perfect working order, and that all the parts are in good condition and repair. And for this purpose he shall have the right to enter the premises where any such elevator may be in use. The result of such inspection shall be properly recorded in books kept for that purpose in the office of the inspector of boilers and elevators, from which place all notices, certificates, etc., shall be issued."

"Sec. 2230. *Elevators—Duties of Owner.*—It shall be the duty of every person operating or using any passenger or freight elevator in any building within the limits of the city to cause the same to be inspected and examined by the inspector of boilers and elevators at least once in three months (excepting elevators operated exclusively by hand, which shall be inspected at least once every six months), and every such person shall apply to and procure from the inspector of boilers and elevators, within five days after such inspection, a certificate to the effect that said elevator is in a safe and sound condition, and said certificate shall be kept in public view by having the same posted as near as possible to the entrance of the elevator car."

"Sec. 2233. *Elevators not to be Operated Without*

*Certificate.*—It shall be unlawful to run or operate any elevator within the city without first having obtained a certificate from the inspector of boilers and elevators as prescribed in the preceding section, and any user of an elevator who fails or refuses to obtain said certificate shall be deemed guilty of a misdemeanor, and upon conviction thereof, be fined not less than ten dollars nor more than one hundred dollars, and for each day such violation shall continue, after notice has been given by the inspector of boilers and elevators, or during which the person or persons so notified shall neglect or refuse to comply with the provisions of this chapter, there shall be an additional fine of fifty dollars.''

"Sec. 2234. *Defects—How Remedied.*—Should any defects be found to exist in any part or parts of any passenger elevator which would tend to impair the safety, or endanger life by continued use of such elevator, the inspector of boilers and elevators shall cause a written notice to be served upon the users of said elevator, which notice may contain a statement of repairs necessary to be made, and said elevator shall not again be used until a certificate in writing shall be issued by the inspector of boilers and elevators that it has been put in a safe running order and is fit for use.''

"Sec. 2235. *Notice of Changes to be Given.*—The inspector of boilers and elevators shall be notified of any changes to be made by owners or users of elevators.''

"Sec. 2238. *Penalty.*—Any violation of the provisions of this article, for which a penalty is not provided, shall be deemed a misdemeanor, and the person, persons, copartnership or corporation guilty thereof shall, on conviction thereof, be fined in a sum not less than ten nor more than one hundred dollars, before the court or courts having competent jurisdiction.''

Justly interpreted, the foregoing municipal laws

tell a story that even one who runs may read. It is obvious, *first,* that they were directed to tempering a little the pressure and hunger for the spoils of office—a hunger which, unregulated, tends to impair the public service of a great city. These laws hold out modest inducements of some degree of stability in public employment. They tend to the betterment of the civil service in quality of men and work. They respond to the idea of a reasonable regulation of tenure of office—an idea so well hammered out on the anvil of public discussion that it has come to stay so long as calm and wise judgment holds sway, and which is not beyond the pale of judicial aid. It is obvious, *second,* that these laws are based on the exercise of the police power. The inspectors of boilers and elevators, provided for, perform public functions under that power coming close home to the welfare and safety of the people in their daily avocations. They have a fixed tenure of office, viz., a term of four years. They are required to give bond to faithfully demean themselves in performing their services, which are to be done under the guiding and chastening sanction of an official oath. Their salaries are fixed at the annual stipend of $1,200, and their qualifications are prescribed by law. Not only so, but thereby their public position is expressly denominated and dignified as an office, and their duties as official duties. Not only so, but they come well within the charter definition of officers, to-wit, those holding situations under the city government or its departments "with an annual salary or for a fixed definite term of office." So, too, the forms of official oath and bond prescribed by the city refer to their position as offices.

In such condition of things, courts have no judicial call to indulge in refined speculations on the mooted question of what is, or is not, a public office; for the very good reason that, in this instance, the status of

plaintiff is fixed by defendant's own definitions and ordinance provisions. As danger lurks in mere generalizations, one sensible method of determining what is an office is to go to the written law creating the position and determining its duties (in this instance defendant's ordinances) and discern the legislative intent evidenced by its words. That was the plan adopted in State *ex rel.* v. Harter, 188 Mo. l. c. 526, *et seq.,* and in State *ex rel.* v. May, 106 Mo. 488.

If, however, the question be referred to the more general definition of public office, the result would be the same. For instance, McFarlane, J., in State *ex rel.* v. Bus, 135 Mo. l. c. 332, declares the sum of the matter to be "that if an officer receives his authority from the law and discharges some of the functions of government he will be a public officer." An office has been defined as "a special trust or charge created by competent authority"—more tersely still, " a public office is a public trust." His oath, his bond, his liability to be called to account as a public offender for misfeasance or non-feasance, the tenure of his position, etc., have been said to be *indicia* of a public officer. [State *ex rel.* v. May, *supra;* Throop v. Langdon, 40 Mich. 682.] And the general doctrine is that the idea of office clearly embraces the ideas of tenure, duration, fees or emoluments, rights and powers as well as that of duty. [6 Words and Phrases, p. 4923.] It has been aptly said that the true test of public office is "that it is a parcel of the administration of government." [2 Bouv. L. Dict., Tit. "Officer."]

It appears, then, that whether our conclusion be drawn from a view of general principles of law, or (more narrowly) be based on a close analysis of the ordinances of defendant city, we must hold plaintiff was an officer of the city of St. Louis. And this although the word "employ" is used in section 2197. The word

is of wide meaning and taken with its context conveys this idea of selecting and intrusting with a duty.

Accordingly, the point is ruled against defendant.

II. Being such officer, we are far within the law in saying that he could not be removed during his term and stripped of his official emoluments except for cause and on due process of law, *i. e.*, on due charges made and due hearing had on due notice given. [State *ex rel.* v. St. Louis, 90 Mo. 19; State *ex rel.* v. Walbridge, 119 Mo. 383; State *ex rel.* v. Maroney, 191 Mo. 531.]

In Williams v. Bagot, 3 B. & C. 1. c. 786, BAYLEY, J., said: "It is contrary to common justice that a party should be concluded unheard." In Queen v. Archbishop, 1 El. & El. 545, Lord CAMPBELL said: "It is one of the first principles of justice that no man should be condemned without being heard." In Meade v. Deputy Marshall, 1 Brock. 324, Mr. Chief Justice MARSHALL said: ."It is a principle of natural justice, which courts are never at liberty to dispense with, unless under the mandate of positive law, that no person shall be condemned unheard, or without an opportunity of being heard." See, also, Womach v. St. Joseph, 201 Mo. 1. c. 482.

In this case the very theory of defendant's answer is, and all the facts show, that plaintiff's official term was construed by defendant to be one at pleasure, and he was wrongfully treated accordingly. Hence, we hold that in the eye of the law (since the city may not profit by its own wrong) plaintiff remained in office and was entitled as of right to his official salary until the end of his term, unless he lost that right on grounds now to be examined.

III. Are there any such valid grounds?

Under this head counsel contend, as we grasp it, that:

(a) Plaintiff abandoned his office; in effect, re-

signed by acquiescing in his removal, taking no steps to oust his successor, try title, etc.

(b) Next, that because of the terms of his bond (hereinafter pointed out) his term ended on the 7th day of April, 1903, or as soon thereafter as his successor was appointed and qualified—in this instance, on the 12th day of June, 1903. Wherefore, it is argued, plaintiff is estopped.

(c) Next, that by receipting for his pay to June 12th, 1903, he must be held to have made final settlement with the city.

(d) And, next, that plaintiff after removal and during the remainder of his term, took employment incompatible with his duties as deputy boiler and elevator inspector, hence cannot recover.

Of these, in order.

(1) The testimony shows that plaintiff did not bring mandamus or sue his successor for his salary nor bring *quo warranto* to test the right of his successor to office. Some stress is laid on those omissions, but they are quite beside the case. The question is: Is he entitled to the remedy sought?

There is no testimony worth the name that he, in effect, resigned his office by abandoning it or by acquiescing in the action of the city. Defendant put in evidence tending to show the action taken had been decided upon without notice to or consultation with plaintiff. The first he heard of it was the bare official *ipse dixit* that it had been determined upon and his services were no longer required. This evidence affords no ground for the inference that such action would not have been taken except it was satisfactory to him. That he mildly bowed his head like a lamb to the official ax, and did not create a scene by blowing a trumpet of futile defiance, amounts to nothing in law, or ethics. His own testimony shows that he raised the question of his right in a manly, if deferential, way. He asked his

chief this: "Are you aware I have got five months and a half to go yet?" His chief replied: "Mr. Gracey, I have looked into that and I find that when the head of a department goes, the deputies go with him." To that plaintiff replied: "You take a different view of it than I do." This was not a protest as "deep as a well nor so wide as a church door," but, like Mercutio's wound, " 'tis enough, 'twill serve"—if protest were demanded at all—and on that score, to my mind, it ill becomes a great city to seek to excuse, palliate or justify its own wrongful action by hiding behind the mere meek silence of its victim. There may be cases where the end of an official term is the result of negotiation and acquiescing; and cases where, standing on an equality, or where inquiry is made and response is demanded, the silence of one shows consent in what the other does; and cases of out and out abandonment amounting in effect to resignation; but the law of those cases does not concern us in this case.

Here plaintiff was not "removed," as that term is understood in the law. What was done was not legally done and therefore had no legal effect. Another was assigned his duties and that other was paid by the city. That was the city's affair, if it chose to take such course with its attending consequences. Plaintiff remained in office, and the point is controlled by the general proposition of law that his right to the salary during his term, until legally removed, was independent of his actual performance of any duties whatever.

In State *ex rel.* v. Walbridge, 153 Mo. l. c. 203, BRACE, P. J., said: "The legal right to the office carried with it the right to the salary. The board by its wrongful act could not deprive him of this legal right. The right of a public officer to the salary of his office is a right created by law, is incident to the office, and not the creature of contract, nor dependent upon the fact or value of services actually rendered." [Citing

an array of authorities to sustain the proposition.]

That an individual, in the shoes of plaintiff, may sue for his salary is the general doctrine. [Dill. Mun. Corp. (3 Ed.), sec. 235; Stadler v. Detroit, 13 Mich. 346.]

The point is ruled against defendant.

(2)    But, it is argued that plaintiff's bond shows that his official term ended on April 7th, 1903, or as soon thereafter as his successor was appointed. The record shows the bond so recited. To accentuate this view, we are pointed to the written appointment of plaintiff which ommitted defining the official term, but used general language. It is contended that such facts create an estoppel and bar recovery. Is there substance in that view? We think not; because:

In Stadler v. Detroit, *supra,* a provision of the charter of that city made the term of office of the marshal two years. Plaintiff was appointed marshal by an order of the council limiting his term to one year and his bond recited his appointment for that term. At the expiration of the year, without his consent, he was removed and another was appointed to the office who entered upon and performed his duties. In an action brought to recover his salary for the second year, it was held that by virtue of his appointment he was entitled to hold office for two years and to receive the salary for the full term; that the recital in the bond was surplusage; and that the appointment of another to the office was not equivalent to plaintiff's removal and did not divest him of the office.

In the course of his opinion, Cooley, J., said: "The term of the office being for two years, the council had no power to limit it to one, by their resolution of appointment; and we have no doubt the appointment of the plaintiff was a valid one for the full statutory period. The fact that the term was stated in his official bond at one year, can make no difference; such

a recital was surplusage, and the bond, so far as appears from the record, was valid for the whole time.''

To the same effect is Shaw v. City of Macon, 21 Ga. 280.

This court has lately been over that ground in State *ex inf.* v. Corcoran, 206 Mo. 1. In that case, Col. Prather had been appointed jury commissioner under a statute fixing his official term at ''four years from and after the first day of May in the year of his appointment.'' He died during his incumbency of the office and Mr. Corcoran, on January 5th, 1904, was appointed by the circuit judges of St. Louis by a written appointment limiting his term as follows: ''To hold and to exercise the duties of said office for the remainder of the term of the said John G. Prather, deceased, late jury commissioner, which said term was for a period of four years from and after the first day of May, 1903.'' That case was In Banc and we all agreed that the limitation in the appointment was not effective; that the statute controlled and must be read into the appointment.

The reason of the thing lies with that view. Otherwise, the law may be pared down or added to at will. Otherwise, official tenures, wisely prescribed by law, become a mere matter of dicker and compact, and all the mischiefs struck down by the law enter again through such open door. Nor do we perceive any estoppel in the case.

The point is ruled against defendant.

(3) Neither is there substance in defendant's contentions relating to a final settlement on June 12th, 1903, and to plaintiff's accepting employment incompatible with his duties as deputy boiler and elevator inspector. When plaintiff was paid up to June 12th, 1903, he received no more than his own. No man is put in jeopardy by that. Observe, there was no compromise sought or attempted, no dispute threshed out:

and settled, no final settlement in any fair sense, and no consideration for a release. His name was on the pay roll for June for a certain amount, covering twelve days of service. He would be in hard lines if he might take that amount (it being confessedly due) without thereby impliedly giving final acquittance, either for the rest of June or the months following. There are cases where by accepting one thing plaintiff waives other things. A case of that kind is State *ex rel.* v. Messerly, 198 Mo. 351, where K, a justice of the peace, was entitled to fees under the general law or entitled to a salary in lieu of fees under an act of the Legislature (held unconstitutional). He received the salary and afterwards sued for the fees. This, it was held, he might not do.

It has been held that one may not hold two offices whose duties are incompatible. Defendant finds solace in that proposition and learned counsel argue that this plaintiff, in his search for employment during the balance of his term, took a temporary position as a hoisting engineer; that such position was incompatible with his duties as deputy boiler and elevator inspector; and, therefore, he cannot recover. There is no merit whatever in that notion. Plaintiff did not hold two incompatible *offices*. There is not an iota of testimony tending to show that if defendant city had allowed him to perform his services as a deputy inspector of boilers and elevators, he could not have taken up his work instantly, with an eye single to the service of his master. Plaintiff did not have to idle, or starve, in order to preserve his right of action.

Other questions are discussed, but we do not deem them material. This case is submitted with three companion cases. Stipulations are filed in those cases which contemplate (1) that this court should reverse and remand with directions to enter up judgment for

plaintiff, or (2) reverse and remand for a new trial, or (3) affirm—as may be done in the case at bar.

If such stipulation had been filed in the case at bar, we would reverse and remand with directions to enter judgment for plaintiff—this because the trial court erred in not setting aside the nonsuit and erred in giving the peremptory instruction; and on this record we think plaintiff would have been entitled to a peremptory instruction himself. But as the stipulation is not filed in the case at bar and as the case was pending before a jury at the time of the nonsuit, we are of the mind that it would be better practice to reverse and remand with directions to set aside the nonsuit and proceed with the cause in accordance with this opinion. It is so ordered.

All concur, except *Valliant, P. J.,* absent.

REVERSED AND REMANDED (*with directions*).