STATE ex rel. CHARLES J. RUNDBERG, Respondent, v. KANSAS CITY, MISSOURI, a Municipal Corporation, JAMES COWGILL, Mayor, WILLIAM HARPER, SAM B. STROTHER, and T. J. IJAMS, Members of the BOARD OF CIVIL SERVICE, ED T. OREAR, City Comptroller, BEN JAUDON, City Treasurer, and W. C. SNYDER, City Auditor, Appellants.

Kansas City Court of Appeals, December 13, 1920.

1. **MANDAMUS: Pleading: Matters Well Pleaded Not Expressly Denied, Admitted to be True.** It is a well-established rule in mandamus that all matters well pleaded by relator and not denied by respondent in express terms are admitted to be true.

206 M. A.—2

2. **MUNICIPAL CORPORATIONS:** Civil Service: Position of City Hall Engineer Within Civil Service Provision: Power of Discharge. The position of engineer at the city hall in Kansas City is within section 5, of article 15, of the civil service provisions of the Charter, of Kansas City, though there is no express provision therein authorizing the appointment, and under section 10, of article 15, of the Charter, all appointments and removals shall be made by respective heads of certain departments under civil service rules, the appointment thereof falls to the Mayor, within meaning of Civil Service Law as the acting "head of the department" making such appointment, and while section 4, of article 15, exempts certain places filled by the Mayor, it did not exempt that of engineer, and although section 10, of article 15, provides that investigation may be made of dismissal or discharge of officials for political, or other reasons, by Commissioners or Board of Civil Service, and report thereof made to the Mayor and officer or tribunal, having power to remove such officer, the position is not thereby taken out of the civil service rules, for the report is not made to the Mayor alone, but also to the tribunal having power under the Charter to remove the officer ordering the discharge, and the Mayor himself being subject to removal by the common council under section 3, of article 4, of the Charter, the power to discharge must be in accordance with express provisions of charter.

3. ——: Civil Service: Empoyee Discharged: No Provision for Reinstatement: Right Protected by Law, Otherwise There Would be a Wrong Without a Remedy. For one who has been discharged in violation of the Charter's Civil Service Law the right of reinstatement does not depend for its existence upon an express provision to that effect in the charter, but such right is given by law to one, who while holding and in possession of a valuable position performs the duties thereof, otherwise the right to hold many places would be beyond judicial aid, and there would be a wrong without a remedy.

4. **MANDAMUS:** Officers: Title to Office: De Facto Officer in Possession: Officer Wrongfully Removed Entitled to Restoration. Relator being rightfully and lawfully in the position performing the duties thereof, and having been wrongfully deprived of his place by the illegal appointment of another, mandamus will lie to effect his restoration even though the subsequent appointee be in possession *de facto.*

5. ——: Officer: Illegal Removal: Entitled to Reinstatement and Back Salary. Where one has been illegally removed and another wrongfully put in his place he can, in mandamus, seek reinstatement, and also the payment of the salary of which he has been thus deprived.

6. ———: Payment of Salary to De Facto Officer: No Defense Against Person Entitled to Position and Emoluments Thereof. Where the wrongful discharge, and not the appointment of another person to a position, prevents the proper incumbent from performing the duties and obtaining the salary pertaining thereto, the payment by city of such salary to illegal appointee is no defense in a mandamus proceeding to compel reinstatement and. payment of compensation.

7. ———: Officer: Wrongful Removal: Entitled to Salary Independent of Actual Performance of Duties. An officer illegally removed is entitled to the salary of his position during his term and his right thereto is independent of his actual performance of any duties whatever.

8. ———: ———: Payment of Salary in Good Faith to Substitute Appointee With Knowledge of Claim of Ousted Official: No Defense. Where the wrongful discharge and illegal substitution of another in official's place occurred, and suit for reinstatement begun and alternative writ issued in less than thirty days after discharge so that city paid such substitute appointee with full knowledge of claim of relator to reinstatement, it is no defense to relator's action that compensation was paid to such substitute appointee in good· faith.

9. ———: No Definite Term: Right to Salary Does Not Apply Strictly to Public Officer With a ''Fixed Term:'' Duties Analogous to Public Office. Where the position is one wherein legal incumbent had the right to perform the duties and functions required of him and the services rendered are of public concern, the position is one with such characteristics as make it analogous to a public office and Civil Service Law supplies "fixed term" by permitting official to remain in position so long as he properly performs duties or until legally removed.

Appeal from Jackson County Circuit Court.—*Hon. Harris Robinson*, Judge.

AFFIRMED.

*Darius A. Brown* and *John G. Parks* for respondent.

*M. A. Fyke, F. M. Hayward* and *E. M. Harber* for appellant.

TRIMBLE, J.—This is a proceeding in mandamus wherein Relator seeks to compel his restoration to the position of Mechanical Engineer for the City Hall of Kansas City, from which, it is alleged, he was illegally removed by the Mayor, and to compel the payment of the salary accruing to him during the time he was out of office because of such unlawful removal. Said position is in the Competitive Class of the Classified City Service and is, therefore, within the ''Civil Service'' laws of the city as provided for in article 15 of the City Charter. Relator passed the competitive examination held by the Civil Service Board and was thereupon duly appointed to the position of Mechanical Engineer of the City Hall on November 29, 1910. He immediately entered said position, performed the duties thereof and received the salary therefor until the 6th day of June, 1918, when while in the peaceful possession of said position and while faithfully discharging the duties thereof, he was summarily removed therefrom by the Mayor of said City, who placed another in charge of said place; and relator has ever since been excluded from said position, has been prevented from performing the duties thereof, and has received no part of his salary since said last named date.

Section 10 of article 15 of the Charter provides, among many other things, that—''No person in the city's service shall be removed, reduced in grade or salary, or transferred because of political or religious bliefs or opinions of such persons; nor shall any person in the competitive class of the city service be removed, reduced in grade or salary or transferred without first having received a written statement setting forth in detail the reasons therefor.''

Relator alleges that he was never furnished with a written statement setting forth in detail the reasons for said discharge or removal; that no charges of misconduct or failure to perform his official duties were at any time made or filed against him, and that he was removed and discharged because of political beliefs and opinions.

The return to the writ was in the nature of a demurrer and a general denial together with a few affirmative allegations, not necessary to notice now, except the one alleging Relator "was removed from said office or position" on June 6, 1918, and that "on said date another person, to-wit: Keiser was duly appointed to said office or position, who duly qualified and took charge of said office or position and has ever since said date discharged and now is discharging the duties thereof, and has ever since said date been paid by the city. the salary appertaining thereto, and since said date, relator' has not performed, or offered to perform, any of the duties thereof."

There was, in the return, no express denial of Relator's charges that he was not furnished with a written statement setting forth in detail the reasons for said discharge or removal, that no charges of misconduct or failure to perform his official duties were ever made, and that he was removed and discharged because of political beliefs and opinions. While it is the well established rule in mandamus that all matters well pleaded by relator and not denied by respondent in express terms are admitted to be true (State ex rel. v. Allison, 155 Mo. 325, 328; State ex rel. v. Williams, 96 Mo. 13, 18), yet we need not rely merely upon this rule of pleading in mandamus, since the trial court found that Relator was not furnished with a written statement in detail of the reasons for his discharge; also that no charges of misconduct or failure of official duty were at any time made or filed against Relator, and that he was removed and discharged because of political beliefs and opinions in direct violation of the prohibition contained in section 10 of article 15 of the City Charter. The court also found the other facts herein before stated, and the evidence fully supports the findings.

The trial court thereupon ordered the peremptory writ issued in accordance with the prayer of the alternative writ, and the defendants have appealed.

We cannot agree with defendants that the place or position of Engineer at City Hall is not within the

"Civil Service" provision of the charter. Section 5 of article 15 (in relation to Civil Service), provides that the Classified Service shall comprise all officers *and positions* in the city service not specially designated in the exempt service and shall be arranged in two classes to be designated respectively as the competitive class and the labor class. The place is not among those designated as within the Exempt Service. Indeed, the method of selection and appointment to the place adopted by the city and its authorities show that the position is considered by it and them to be one within the Civil Service provisions. But the argument is that there is no provision stating who shall appoint persons to the position of Engineer of the City Hall, and hence it falls to the Mayor to make the appointment as he is the Chief Executive officer of the city; and since section 10 of article 15 of the charter, containing the above quoted provision in reference to the removal of persons in the civil service list, says that "all appointments to positions and employments in the several departments of the city service shall, unless otherwise provided, be made by the respective heads of such departments and such heads of departments shall respectively have power to remove or discharge any person holding any office, position or employment in their respective departments." etc. Therefore, the herein before quoted provision with regard to the removal of persons in the Civil Service list does not apply to persons appointed by the Mayor since he does not come within the meaning of the term "head of a department." Under the pleadings, it stands admitted that the charter and ordinances provide for the position and employment of a Mechanical Engineer at the City Hall, and it nowhere appears in evidence that the position is a mere *de facto* place outside of the charter and ordinances of the city, nor is it shown that no provision exists as to who shall make the appointment. But, even if the charter and ordinances are silent as to who shall appoint the City Hall Engineer, nevertheless the Mayor, in making such ap-

pointment, acts as the head of that department, which, in fact he is, and in appellant's brief he is referred to as such. Besides, the provision against removal for political or religious beliefs is *general* and is not confined *merely* to appointments made by the heads of departments. The second paragraph of section 4, article 15, exempts certain *specified* places filled by the Mayor, but does not exempt *all* of them. If appointments by the mayor are exempt from, or not subject to, the Civil Service regulations, why was it necessary to exempt those specifically named therein which were only some of the places to be filled by the Mayor?

It is true the next paragraph of section 10, article 15, provides that whenever the Commissioners or Board of Civil Service shall have reason to believe that any officer, board, head of department or person having power to discharge, has abused such power by making dismissals or discharges for political or other reasons than for the good of the public, the Board shall make such investigation as they may deem advisable, and if they find that any such violation of the provisions of the intent and spirit of said article has occurred, they shall report to the Mayor and the officer or tribunal having power under the Charter to remove such officer, board, head of department, or person, and such report *shall be sufficient cause for removal* of such guilty officer, board, head of department or person. But we do not think this is sufficient to override and set aside the plain intent and obvious provisions of the Charter as to Civil Service and make them inapplicable to appointments made by the Mayor. It is urged that such a construction renders it absurd that the Mayor's own violation should be reported to him, but the report is not to him alone but also to the "tribunal having power under this Charter to remove such officer;" and the Mayor is not the only one who can exercise the power of removal. He is himself subject to removal by the Common Council. [City Charter, sec. 3, art. 4.]

But it is further urged that there is no provision in the city charter providing for the reinstatement of

persons wrongfully removed; that the city authorities or heads of departments have full power to remove or discharge any person, holding any office, position or employment therein whenever the good of the public service requires it; and that the only provisions in the Charter to prevent wrongful discharges are the *penalty of removal* of the discharging officer and the fact that the discharging officer does not, by reason of section 16, article 15 of the Charter, have the selection of the discharged person's successor, but can only appoint the next person standing highest on the eligible list prepared by the Civil Service Board.

However, for one who has been discharged in violation of the Charter's Civil Service Law, the right of reinstatement does not depend for its existence upon an express provision to that effect in the charter. Such right is given by the *law* to one who, while holding and in posession of a valuable place or position, performing the duties thereof has been unlawfully deprived thereof. Otherwise the right to hold many places would be "beyond the pale of judicial aid," whereas they have not been so declared but the right to reinstatement has been upheld. To hold otherwise would be to declare that there is a wrong without a remedy.

The claim that the city authorities or heads of departments have full power to discharge, cannot prevail in view of the express provisions of the Charter to the contrary; and to say that the two provisions above mentioned are sufficient to safeguard the purposes and compel the observance of the Civil Service Law is likewise untenable. In the first place, the penalty of removal of the discharging officer is not mandatory. He is merely *subject* to removal; and where the Mayor is himself the discharging officer, there is no reasonable likelihood that such penalty would be imposed, for the Civil Service Board, appointees of the Mayor, would scarcely heed, much less investigate, a complaint against him, and certainly would not make a report adversely to his. And the fact that he could not directly and immediately name

a successor to the one discharged but must take the first one on the Civil Service list, would be no real safeguard for the observance of the Civil Service Law, since he could, if his power to discharge is not limited, continue to discharge until the one of his personal choice was reached. The purpose of the Civil Service Laws is well understood. Such laws are to prevent the operation of the spoils system with reference to those places to which they have been extended. "They tend to the betterment of the civil service in quality of men and work. They respond to the idea of a reasonable regulation of tenure of office—an idea so well hammered out on the anvil of public discussion that it has come to stay so long as calm and wise judgment holds sway, and which is not beyond the pale of judicial aid." [Gracey v. St. Louis, 213 Mo. 384, 393.] We do not think that because there is a clause or paragraph in the charter providing for the *possible* removal of a discharging officer, this means that a person *improperly* discharged is deprived of the remedy the *general law* would otherwise give him, nor can we escape the thought that the construction contended for by appellant's would tend in great degree to emasculate the Civil Service Law.

According to the findings and the evidence, Relator was appointed to the place under the Civil Service Law; he was in possession of the same and while faithfully performing the duties thereof, he was removed in violation of the regulations provided to preserve the purposes of such Law intact. The discharge was void upon its face, and, as said in Gracey v. St. Louis, 213 Mo. 384, l. c. 395, we are within the law in saying that he could not be thus removed and stripped of the emoluments of the place except for cause and in accordance with the laws governing the same.

It is further contended that as another person has been appointed in Relator's place and such other has been performing the services and receiving the pay of such position, mandamus will not lie because the right to an office is what is really involved, which cannot be

determined in mandamus. But Relator was rightfully
and lawfully in the position performing the duties there-
of, entitled to the emoluments pertaining thereto and
was illegally deprived of the place. Having been wrong-
fully deprived of his place by the illegal appointment
of another, mandamus will lie to effect his restoration
even though the subsequent appointee be in possession
*de facto.* [Spelling on Injunction and Other Extraordi-
nary Rem. (2 Ed.), sec. 1576; State ex rel. v. Miles,
210 Mo. 127, 165-172.] The case last cited also fully
answers the contention that the place of Mechanical
Engineer at the City Hall is not a public office and the
incumbent thereof not a public officer, but is a mere
employee. At page 165 of the Miles case, supra, Fox,
J., said, "In our opinion it is immaterial as to what
you may denominate the position of the relator. If the
duties imposed upon him either make him a public officer
or a *quasi*-public officer, or if the position is one wherein
he has the right to perform the duties and functions
required of him, and the matters about which he per-
forms the service are those of public concern, or if the
position is one with such characteristics as to make it an-
alogous to that of a public office, then he has the right to
invoke the remedy by writ of mandamus for the purpose
of restoring him to the rights of which he has been illegal-
ly deprived. Upon this proposition the law is well set-
tled.''

It is furthermore contended that Relator is not en-
titled to salary until after reinstatement and therefore
the writ having asked for more than relator is entitled
to, it should be denied. But it is held that where one
has been illegally removed and another wrongfully put
in his place, he can, in mandamus, seek his reinstate-
ment and also the payment of the salary of which he
has been thus deprived. [State ex rel. v. Walbridge,
153 Mo. 194, 204; State ex rel. v. Brodie, 177 Mo. App.
382.]

But it is urged that in the case at bar, the city has
paid the salary to the one substituted in relator's stead.
In the Walbridge case, another had been appointed to

the place from which relator had been discharged. (sec. 153 Mo., p. 198), and presumably the substituted appointee had been paid, yet the court, on page 203, say the cases holding payment to a *de facto* officer in good faith as a defense ''can have no application'' to a case in which the plaintiff ''was not prevented from holding his office, discharging its duties and drawing its salary by reason of the fact that some other person had intruded himself into it under color of title to whom the salary might in good faith have been paid, but by the wrongful act of the Board of Police Commissioners (the governing power) in discharging him without cause.'' Manifestly it is not the *appointment* of the other person which prevents the proper incumbent from performing the duties and obtaining the salary pertaining thereto, but it is the *wrongful discharge*. And this prevents the payment of salary to the illegal appointee from being a defense, whether the city, in paying it, did so in good faith or not. Indeed, if the discharge was *wrongful*, how can the claim of good faith avail? In Gracey v. St. Louis, 213 Mo. 384, 397, another was assigned to the place from which relator was wrongfully dismissed and such other was paid by the city, and yet the court say: ''Here plaintiff was not 'removed,' as that term is understood in the law. *What was done was not legally done and therefore had no legal effect.* Another was assigned his duties and that other was paid by the city. *That was the city's affair,* if it chose to take such course with its attending consequences. Plaintiff remained in office, and the point is controlled by the general proposition of law that his right to the salary during his term, until *legally* removed, was independent of his actual performance of any duties whatever.'' (Italics ours.)

Besides, in the case at bar, the wrongful discharge, and the illegal substitution of another in relator's place, occurred on June 6, 1918, and this suit for reinstatement was begun June 20, 1918, and the amended alternative writ was issued July 30, 1918, so that the city paid such substituted appointee with full knowledge of the claim of relator to reinstatement. It, therefore, occupies no better

position than it did in the case of Luth v. Kansas City, 218 S. W. 901.

It will not do to say that the above proposition in reference to relator's right to the salary applies only to a strict public *officer* with a *fixed term*. As hereinbefore cited from the Miles case, it is immaterial what the position may be denominated. The position was one wherein relator had the right to perform the duties and functions required of him, and the matters about which he performs the services are those of public concern, and the position is one with such characteristics as to make it analogous to that of public office. The provisions of the Civil Service Law supply the place of a *fixed term* allowed a public officer and permit relator to remain in the position so long as he properly performs his duties or until he is *legally* removed.

No defense to the preceeding has been shown by appellants either in law or upon the facts, and hence the judgment of the trial court in directing the peremptory writ of mandamus to issue must be, and is, affirmed. The other judges concur.