STATE OF MISSOURI at the RELATION of JOHN
F. WINGFIELD, Respondent, v. KANSAS CITY,
MISSOURI, et al., Appellants.* ·

In the Kansas City Court of Appeals, June 16, 1924.

1. **JURY:** Mandamus: Civil Service: Pleading: Proceeding in Manda-
mus Held not to Have Been Transformed by Amendment into an
Action for Salary Only so as to Entitle Defendants to Trial by Jury.
In a proceeding in mandamus where civil service employee claimed
to have been wrongfully discharged, sought reinstatement, restora-
tion to payroll and payment to him of compensation for stated
period, after amendment of alternative writ and striking out
prayer for relator's reinstatement to position, *held* not to trans-
form suit into an action for salary only, so that denial to defend-
ants of trial by jury was not error under section 28, article 2 of
the Constitution.

2. **STATUTE OF LIMITATIONS:** Proceeding by Civil Service Em-
ployee for Salary as a Result of Wrongful Discharge Held not to. be
Within Three-Year Statute of Limitations. In mandamus proceed-
ing by wrongfully discharged civil service employee for restoration
to payroll and for compensation, *held* governed by five-year Statute
of Limitations (section 1317, Revised Statutes 1919), the action
being upon a liability created by statute other than a penalty or
forfeiture, and not within three-year statute (section 1318, Revised
Statutes 1919), relating to actions against public officers upon
liability incurred by doing act in official capacity, etc.

3. **LACHES:** Where Wrongfully Discharged Civil Service Employee
Began His Action for Restoration and Salary Within Statutory
Period of Limitations, He was not Guilty of Laches. Where wrong-
fully discharged civil service employee began his action for restora-
tion and salary, within statutory period of limitations, he could not
be guilty of laches.

4. **MUNICIPAL CORPORATIONS:** Civil Service: Civil Service Em-
ployee Discharged Without Being Given Written Statement of Rea-
sons for Discharge Held Entitled to Restoration upon Payroll and to
Compensation. An inspector of new plumbing, within competitive
class of civil service employees of Kansas City, discharged without
being given a detailed statement in writing of the reasons for his
discharge, or without notice prior thereto that he would be dis-

charged, as required by section 10, article 15, of Charter of Kansas City, *held* entitled to restoration to payroll and to compensation.

---

*Headnotes 1. Mandamus, 35 C. J., Section 64; 2. Limitations of Actions, 37 C. J., Section 126; 3. Equity, 21 C. J., Section 219; 4. Municipal Corporations, 28 Cyc., p. 597.

Appeal from the Circuit Court of Jackson County.— *Hon. Thad B. Landon*, Judge.

AFFIRMED.

*John B. Pew, George Kingsley* and *T. J. Seehorn* for appellants.

*John I. Williamson* and *John G. Park* for respondent.

ARNOLD, J.—This is a proceeding in mandamus wherein relator seeks reinstatement upon the payroll of defendant city as inspector of new plumbing, water department, from May 31, 1918, the date of his discharge, to April 17, 1922, and payment to him of the compensation of said position during that period.

The suit was begun February 27, 1922, in the circuit court of Jackson county, but before the cause came to trial a charter amendment creating a non-partisan water commission was adopted by the voters of Kansas City, to-wit, on November 22, 1921. Said amendment provided that the members of said commission should assume charge of the operation of the water department on the first day of the fiscal year 1922, viz., April 17 of that year, and should create their own list of eligible employees. It was thought these provisions exempted the water department from the civil service law as that law is expressed in article 15 of the charter of said city, and empowered the new water commission to establish its own system of civil service, and thereby deprive the old board of fire and water commissioners of control of em-

217 Mo. App.

ployees in the department, and at the same time would remove from the civil service commission the power of examining and certifying for appointment employees of that department. On April 17, 1922, relator withdrew his prayer for reinstatement to said position and by amendment to his petition limited his recovery to compensation for the period between the date of his discharge and the date when the said amendment became effective, according to its terms. The said amendment to the charter afterwards was declared by the Supreme Court to be void. [State ex inf. Atty. Gen'l. v. Maitland, et al., 246 S. W. 267.]

Relator herein first became an employee of The Water Company, a private institution and worked as a fireman at the Turkey Creek pumping station in 1887, which position be held for three years. In the meantime the waterworks became the property of the city and in 1903 relator returned to the service. About 1904, he was appointed inspector in the inspection division of the water department and served either as district or general inspector for a period of thirteen years, and then for approximately one year, he was inspector of new plumbing.

Under the provisions of the charter of Kansas City adopted in 1908, relator took two civil service examinations. In the first of these he attained a grade of 88.3 per cent, ranking first on the eligible list approved July 5, 1911. He was certified on July 11th and on July 15th was appointed to the position of inspector, water department, at a salary of $1,020, which afterwards was increased to $1,080 per year. On the second examination he attained an average of 78%, standing fifth on the eligible list, which was approved August 9, 1916. On August 17th, thereafter, he was certified for appointment and appointed inspector of new plumbing, his compensation being increased to $1,440 per year. Subsequently, by ordinance, his salary was raised to $1,500, then to $1,650, and finally, to $1,800 per annum.

It is disclosed by the records of the civil service board that on May 29, 1918, the board of fire and water commissioners notified the board of civil service commissioners of the discharge "for cause" of relator, effective May 31, 1918. The record shows that relator was never given a detailed statement of the reasons for his discharge, nor was he notified prior thereto that he would be discharged. No hearing was accorded him. He sought to be reinstated through the efforts of one Emmet F. McElroy, a member of the board of five and water commissioners, and McElroy, through friends, importuned other members of the board to reinstate relator, stating that he had been discharged without cause and contrary to the provisions of the civil service law. Relator's efforts in this behalf extended over a period of several months, but were ineffectual, and this action followed.

The amended alternative writ sets out facts substantially as above related and alleges that the position of inspector of new plumbing was in the competitive class of the classified civil service, as provided by Article 15 of the city charter; that section 10 of said Article 15 provided, among other things:

"No person in the civil service shall be removed, reduced in grade or salary, or transferred because of political or religious beliefs or opinions of such person, nor shall any person in the competitive class of civil service be removed, reduced in grade or salary or transferred without first having received a written statement setting forth in detail the reasons therefor."

The return of defendant city to said alternative writ states, (1) that the writ fails to state facts sufficient to entitle relator to the relief sought or to any relief; (2) that the writ shows upon its face that relator is not entitled to the relief prayed, nor to any relief, and denies generally and specifically all the matters and things set out in the petition. And as further return, it is alleged that plaintiff is guilty of *laches,* and is thereby estopped from maintaining the action in this, that the right of

action accrued more than three years and six months before this suit was brought. The Statute of Limitations is invoked in that it is charged that plaintiff's action is governed by section 1318, Revised Statutes 1919.

The separate returns of the other defendants embrace the same denials of the allegations in the petition, and, in addition, it is averred that relator never at any time demanded any hearing, nor more detailed reasons for his discharge.

The reply denies that relator has been guilty of *laches* or that he is barred from relief by the provisions of section 1318, Revised Statutes 1919, or any other statute.

Upon the issues thus made the cause was called for trial and over the objections of defendants, the court, on motion, permitted an amendment of the petition and alternative writ so as to strike out the name of the old fire and water board and insert in lieu thereof the names of members of the board of water commissioners who are named explicitly in the charter amendment and who took charge of the operations of the water department on April 17, 1922. Defendants thereupon demanded a jury trial upon the ground that under the amended petition and alternative writ, the suit was no longer one for reinstatement, but merely a suit for salary. Said demand was refused and a trial to the court resulted in the following judgment for plaintiff:

"The court being fully advised doth find all and singular the issues in favor of the relator (plaintiff) and doth file certain declarations of law given and refused.

Wherefore it is considered, ordered and adjudged that plaintiff recover of and from the defendants and that a peremptory writ as prayed in the amended petition as amended by interlineation, issue as follows:

Whereas on the trial of the issues in the above entitled cause, this court has duly found and adjudged the same in favor of the relator, John F. Wingfield. Nevertheless you and each of you have refused illegally and

still do so refuse to reinstate and restore relators to all the rights, privileges and emoluments pertaining to the position or employment of inspector of new plumbing, inspection division, water department of Kansas City, Missouri, to the manifest injury of the said John F. Wingfield, plaintiff herein, as this court has duly found and adjudged.

Now, therefore, we being willing that speedy justice should be done in this behalf to him, the said John F. Wingfield, do command that you, Alexander Maitland, George H. Edwards, Louis P. Rothschild and Hughes Bryant, on your successors in office, as members of the board of water commissioners of Kansas City, Missouri, and W. Forrest Brown, as assessor and collector of water rates, without further excuse or delay, reinstate and restore plaintiff's name upon the pay roll of the water department from May 31, 1918, to April 17, 1922, the amount of said compensation now being $6325.42, and certify the same to the city comptroller with your requisition upon the city auditor therefor, and that you recognize plaintiff as the inspector of new plumbing, inspection division, water department, and that you, John T. Smith, as city comptroller, approve the said pay roll as aforesaid as to petitioner's claim, and present same to said auditor and to said board of civil service for their endorsement, and that you countersign petitioner's said warrant for his said salary, and that you, William H. Harper, Sam B. Strother and J. T. Longstreth, as members of said board of civil service, endorse said pay roll as to petitioner's said salary; that you, W. W. Knight, as city auditor, draw your warrant upon the city treasurer of Kansas City, Missouri, for petitioner's salary as shown by said pay roll from May 31, 1918, to April 17, 1922; that you, Ben Jaudon, as city treasurer, pay said warrant when presented by petitioner; that you and each of you, the above named defendants, take every step necessary to restore and reinstate the plaintiff to all the rights, privileges and emoluments pertaining to said po-

sition and employment as inspector of new plumbing, inspection division, water department from May 31, 1918, to April 17, 1922, and recognize plaintiff as such and we do also command that you make known to said court on the 14th day of October, 1922, how you shall have executed this writ and have you then and there this writ.

Witness Thad B. Landon, Judge of the Circuit Court of Jackson County, Missouri, and seal of said court hereto affixed this 7th day of October, 1922.

THAD B. LANDON, Judge,
W. H. HARPER, Clerk.''

(Seal.)

Motions for new trial and in arrest were overruled and defendants appeal.

The testimony of Emmett F. McElroy, a member of the board at the time of the attempted discharge of relator was to the effect that lists of employees for discharge were presented to the board at its regular meetings; that he never knew of any written charges having been preferred against the accused; that there were no hearings by the board, nor charges made to the board to show that the discharged employees were incompetent or inefficient. Upon receipt by the board of the lists of employees to be discharged, an order of discharge was issued. Such order as applying to the discharge of relator and including his name, together with others discharged, is as follows:

May 25, 1918.

''Mr. Robt. W. Goodnow,
Assessor & Collector Water Rates,
City.
Gentlemen:

The board, at its meeting today, ordered that the following men employed in the water dep't, be discharged for the good of the service, subject to approval of Board of Civil Service.''

The following notice was then given the civil service board, as required by the Charter:
                    "Competitive Class.
Office of the Fire & Water Commissioners,
                    Kansas City, Mo., May 29, 1918.
"Honorable Board of Civil Service:
    You are hereby notified of the discharge for cause ......................... of J. F. Wingfield ........ from the position of Inspect. of New Plumbing, salary $.......... to take effect May 31, 1918.
                    ROBT. L. SMITH, President,
                    EMMET LYNCH, Secretary."

    There was also introduced in evidence the pay-rolls of the Water Department covering the period for which relator was employed under the civil service law, until his attempted discharge on May 31, 1918; and also all the records and data relating to the various examinations taken by relator, his appointments and promotions thereunder.

    At the outset of this review it seems necessary to notice the charge made by plaintiff that defendants have violated section 1511, Revised Statutes 1919, and rule 16 of this court in that their "statement" is not "clear and concise" as therein required; that said statement is "a lengthy, disordered assemblage of pleadings, evidence, rulings and judgment" and "is an abstract of the record, rather than a part of a brief." It is urged that a failure to furnish "a clear and concise statement" compels a dismissal of the appeal.

    It is proper to note that the statement, while not presented in the manner and style which might have been employed, is sufficiently clear and concise as to advise counsel of the allegations of error depended upon in support of the appeal. While a statement in the condition of the one now before us puts additional labor upon the court, no difficulty is encountered in grasping the points presented therein, we think it is not such a violation

of the requirements of the statute and our rule 16, as to warrant a dismissal of the appeal.

Defendant's first change of error is that after amending the alternative writ and striking out the prayer for relator's reinstatement to his former position, there was left only the matter of restoration to the pay-roll for the stated period; that relator has thus transformed his suit into an action for salary only and defendants therefore were entitled to trial by jury as guaranteed by section 28, article 2 of the Constitution of Missouri.

Under the facts of record, we cannot accept this position as sound. The petition and alternative writ show upon their face that the relator did not abandon his prayer for restoration to the pay-roll. True, he asks for restoration and pay only for a specified period, but that fact cannot deprive him of his rights under the writ of mandamus. Other issues, therefore, were involved than the recovery of money, to-wit, a judicial appropriation and restoration to the rolls for a specified period, and the situation is controlled by section 1399, Revised Statutes 1919. It was held in State ex rel. White v. Goodfellow, 1 Mo. App. 495:

"There was no error in refusing a jury trial because there were no material issues of fact to submit to the jury; had the case been otherwise, in a proceeding of this character, the parties cannot insist upon a jury." [See also State ex rel. v. Vail, 53 Mo. 97, and Norton v. Lupton, 64 Mo. 415.] Under the rule laid down in State ex inf. Atty. Gen'l v. Lumber Co., 260 Mo. 212, there was no error in the action of the trial court in refusing trial by jury.

As a second assignment of error, it is urged that the three-year Statute of Limitations bars relator from recovery. It is argued that as relator's cause of action is based upon an alleged wrong done in an official capacity, in virtue of official conduct in office and by an omission of an official duty, it was error for the court to find, as a matter of law, that this suit, filed more than three years

after the date of such official wrong was timely brought and that relator was entitled to recover, citing section 1318, Revised Statutes 1919 (section 1890, R. S. 1909) in support of such contention. Said statute is as follows:

"Within three years: First, an action against a sheriff, coroner or other officer, upon a liability incurred by the doing of an act in his official capacity and in virtue of his office, or by the omission of an official duty, including the non-payment of money collected upon an execution or otherwise; second, an action upon a statute for a penalty or forfeiture, where the action is given to the party aggrieved, or to such party and the State."

Clearly this section does not apply to the facts in the case at bar, because there is no claim here that any officer, as such, incurred any liability "by the doing of an act in his official capacity and in virtue of his office, or by the omission of an official duty, including non-payment of money collected upon an execution or otherwise . . . " The appellate courts have construed this statute to mean that it applies to suits for recovery of a money judgment. As stated above, the case at bar involves other questions than the recovery of the salary of relator, and we hold that this statute does not apply. Moreover, we hold that section 1317, Revised Statutes 1919, does apply, this being an action upon a liability created by statute other than a penalty or forfeiture," and that this case is governed by the five-year period of limitations.

In this connection it must be remembered that the writ requires recovery, not as damages, but for compensation provided by law to be paid from the city treasury, and not from the treasury of the defending officers; in other words, the liability is that of the city and not of the officers thereof. [Drainage District v. County, 189 S. W. 1176, 269 Mo. 78, and the same parties, 216 S. W. 949; Brown v. Railroad, 198 Mo. App. 71.] We therefore hold against the contention of defendants on this point. This ruling answers the contention also that re-

lator was guilty of laches for the reason that he could not be guilty of laches if his action was begun within the statutory period which we find to be controlling.

Finally, it is urged that when, upon the entire record, relator has failed to establish a legal right to be restored to a position from which he has been discharged, it is error to refuse a request for a declaration that relator is not entitled to recover. Certainly, if this hypothesis be correct, the conclusion would be proper. As is said in Davis v. Thompson, 209 Mo. 196:

"It is the province of the court to determine in all cases all questions of law, and whether there is any evidence tending to establish the cause of action alleged in the petition (Boland v. Railroad, 36 Mo. 484; O'Malley v. Railroad, 113 Mo. 319); and in the absence of such evidence a demurrer thereto, if such be interposed, should be sustained."

It now remains to be determined from the record whether, as a matter of fact, relator failed to establish his legal right to restoration to the position from which he was discharged. The testimony shows that relator was discharged on May 31, 1918, from the position held by him under the civil service laws of the city; that notice thereof was given to the civil service board on May 29th; that no written notice was given to relator stating in detail the reasons for such discharge, and no hearing was ever accorded him.

The case of relator is one of a number of cases involving the same issues and the same state of facts. One of these cases recently decided by the Supreme Court, to-wit, State ex rel. Hamilton v. Kansas City, et al., 259 S. W. 1045, is directly in point and is absolutely controlling herein, and the point we are now considering is decided, in that case, against the contention of defendants. The opinion quotes, in part, section 10, article 15 of the charter of Kansas City (1908) as follows:

". . . such heads of departments shall respectively have power to remove or discharge any person holding

any office, position, or employment in their respective departments whenever, in their opinion, the good of the public service requires the exercise of such power. It shall be the duty of a discharging officer, upon request of a discharged person, at any time after discharge, to give such person a correct statement in writing of the reason for his discharge. No person in the city's service shall be removed, reduced in grade or salary, or transferred because of political or religious beliefs or opinions of such persons; nor shall any person in the competitive class of the city service be removed, reduced in grade or salary or transferred without first having received a written statement setting forth in detail the reasons therefor; and at the option of the person who shall have been removed, reduced, or transferred, a copy of such statement shall be filed in the office of the Civil Service Commissioners, together with reply, if any made thereto, by the person removed, and the whole shall be filed and preserved in the office of said commissioners and be open to public inspection.''

Construing this section of the charter, the opinion states:

''Counsel for defendants construe these provisions to mean that there is only one limitation upon the power of heads of departments to remove or discharge any one 'whenever in their opinion the good of the public service requires the exercise of that power.' They concede that removal or discharge cannot be made 'because of political or religious beliefs' of such person. Barring that limitation, their argument is that there is unrestricted right to remove or discharge. It may be well to note the language of the sentence above quoted. The first sentence, in giving power, is general—gives power to 'remove or discharge any person.' This applies to the competitive class and the labor class. The next sentence requires 'the discharging person, at any time after discharge, to give such person a correct statement in writing of the reasons for his discharge.' A person is

'discharged' from an employment. The next sentence does not use the word 'discharge' at all. It contains two limitations. The first clause expressly withholds the power to remove, reduce in grade or salary, or transfer any person in the city's service because of political or religious beliefs. The second clause has reference to the competitive class alone. No one in this class of the city service shall be 'removed, reduced in grade or salary or transferred without first having received a written statement setting forth in detail the reasons therefor.'

"Continuing, the right to reply in writing is given, and if the person be removed he may require copies of the charges and of his reply to be filed with the civil service board. This board may investigate an abusive exercise of the power to remove, 'and if they shall find that any such violation of the provisions of the intent and spirit of this article has occurred, they shall make report thereof to the mayor and the officer or tribunal having power under this charter to remove such officer, board, head of department, or persons, and such report shall be sufficient cause for removal of such guilty officer, board, head of department, or person.' Clearly, the framers of the charter gave to the board or heads of departments power to remove a person in the competitive class. They gave it as a necessary and wholesome power, to be exercised for the good of the public service, and with that 'intent and spirit,' but, equally clearly, they made the giving to the person affected of a written statement setting forth in detail the reasons, and opportunity to reply and to be heard thereon, a condition precedent to the exercise of the power. The people of Kansas City adopted this as a law governing the practice to be pursued in removing persons in the competitive class of the civil service of the city. In function it is administrative, but in quality of requirement it is 'a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial.' The relator received his authority from the law, and was discharging some of the functions of government. He was an

officer. [State ex rel. v. Bus, 135 Mo. 325, 331, 36 S. W. 636, 33 L. R. A. 616; Gracey v. St. Louis, 213 Mo 394, 111 S. W. 1159.] He held the office, not for a specific term of years, but until and subject to removal in a lawful manner, for the good of the public service of the city. [Gregory v. Kansas City, 244 Mo. 523, 149 S. W. 466; State ex rel. Rundberg v. Kansas City, 206 Mo. App. 17, 226 S. W. 986; State ex rel. Rawlings v. Kansas City, (Mo. App.) 250 S. W. 927; Gracey v. St. Louis, 213 Mo. 384, 394, 111 S. W. 1159; State ex rel. v. Maroney, 191 Mo. 531, 90 S. W. 141; State ex rel., Denison v. St. Louis, 90 Mo. 19, 1 S. W. 757; Roth v. State, ex rel. Kurtz, 158 Ind. 242, 63 N. E. 460; State ex rel. Gilmur v. Seattle, 83 Wash. 91, 145 Pac. 61.] The 'written statement setting forth in detail the reasons' is a prerequisite. It is making of this written statement and notice of it to the person affected which completely vests authority to proceed. The purpose of it is to afford the party, complained against an opportunity to be heard. [Truitt v. Philadelphia, 221 Pa. 331, 70 Atl. 757; Ridgway v. Fort Worth (Tex. Civ. App.), 243 S. W. 740, and authorities above cited.] A written statement delivered after the decision and act of removal, stating that the removal was 'for cause and for the good of the service' neither in time nor substance complies with the charter provision. [State ex rel. Norton v. Lupton, 64 Mo. 415, 27 Am. Rep. 253. And see, also, State ex rel. v. Wells, 210 Mo. 601, 109 S. W. 758.] When the defendants, members of the board of public works, on the 31st day of May, 1918, assumed to remove relator, they did so without having first complied with a requirement essential to their possession of authority to remove him." [See also State ex rel. Eckles v. Kansas City et al., 257 S. W. 197, (Mo. App.).]

In view of the rulings in the cases cited, and especially in the Hamilton case from which we have quoted at length and which ably discusses and fully determines the issues here raised, we deem it unnecessary to indulge in further discussion herein.

The judgment is affirmed. All concur.