THE STATE ex rel. FRED B. HAMILTON v. KANSAS CITY et al., Appellants.

Division One, March 7, 1924.

1. **SUPERINTENDENT OF BUILDINGS: Civil Service Appointment: Kansas City Charter: Building Code.** The Kansas City Charter of 1908 operated to repeal so much of the Building Code Ordinance of March 9, 1908, as made the appointment by the Mayor of the Superintendent of Buildings dependent upon the consent and approval of the Upper House of the Common Council, and placed the office of Superintendent in the competitive class of civil service, and said office became vacant when the Civil Service Commission, created by the charter, began to function, and the appointment, by

State ex rel. Hamilton v. Kansas City.

the "appointing officer," of the person who received the certificate of the commission certifying that he was first on the eligible list of applicants, thereupon became mandatory.

2. ———: Appointment: By Mayor: Acquiescence. The city charter provided that "the mayor shall have power to appoint, in the manner provided by this charter," all appointive officers "not otherwise appointed;" that in case a vacancy occurred in the office of Superintendent of Buildings, the Board of Public Works should certify that fact to the Civil Service Commission, which should hold examinations, and issue a certificate to the applicant ranking first among the list of eligibles; and that thereupon "the appointing officer shall fill such place by the appointment of the person certified to him by said commission therefor." The office or position of Superintendent of Buildings was within the department of the Board of Public Works, a board appointed by the Mayor, and the charter further provided that the Mayor "shall *ex officio* be a member of all appointive boards, but without the right to vote therein." The relator received a certificate from the commission, which was a charter mandate requiring his appointment, and a question presented is, who, within the meaning of the charter, was "the appointing officer," the Mayor, or the Board of Public Works? Upon the presentation of said certificate to the Mayor he appointed relator Superintendent of Buildings, and the Board of Public Works acquiesced in said appointment, and thereafter for eight years recognized relator as such superintendent. *Held*, that the appointment must be recognized as the act of the Board of Public Works, done through the Mayor, and that relator held the position not merely as a *de facto* but as a *de jure*. officer, and the appointment was legal and binding·upon said board.

3. ———: Removal: Without a Hearing. The Superintendent of Buildings of Kansas City is an officer, in the competitive class of the civil service, and under the city charter the Board of Public Works had no authority to remove him without first giving him a "written statement setting forth in detail the reasons" for his removal, and an opportunity to be heard. A written statement delivered to the officer after the decision and act of removal, stating that the removal was "for cause and for the good of the service," neither in time nor in substance complied with the charter.

4. ———: ———: Ratification by Mayor. The removal of the Superintendent of Buildings by the Board of Public Works being unlawful, its ratification by the Mayor did not make it lawful.

5. ———: ———: On Account of Religious Faith or Political Opinions. Removal of an officer in the competitive class of civil service on account of his religious faith or political opinions is not the only

limitation prescribed by the Kansas City charter upon removal at discretion, but even that limitation can stand in its integrity only by enforcement of the charter requirement that affirmative facts justifying removal on other grounds shall be set forth in a preceding written statement giving "in detail reasons" for his removal, as the charter requires.

6. ———: ———: **Facts Considered on Mandamus to Reinstate.** In the trial of a mandamus to compel the re-instatement of an officer who alleges he was unlawfully removed, and to require the payment of his compensation during the period of his discharge, charges and evidence of misconduct on his part while in office, which were neither made nor attempted to be proved in the proceedings before the board which removed him, will not be considered.

7. ———: ———: **Mandamus for Reinstatement: Recovery of Salary.** One rightfully and lawfully in office, performing the duties and entitled to the salary thereof, upon being wrongfully deprived thereof by the illegal appointment of another thereto, may have his remedy in mandamus to compel re-instatement and the payment of the salary of which he has thus been deprived. Nor will the fact that he has not performed the duties of the office since his removal, and that another has done so and has been paid for so doing, avail to deny him a recovery of the salary. His legal right to the office carried with it the right to the salary.

---

Headnotes 1 to 7: **Municipal Corporations:** 1 and 2, 28 Cyc. 416; 3 and 5, 28 Cyc. 444; 4, 28 Cyc. 445 (1926 Anno); 6, 28 Cyc. 447; 7. 28 Cyc. 447, 450.

Appeal from Jackson Circuit Court.—*Hon. James H. Austin,* Judge.

AFFIRMED.

*John B. Pew* and *George Kingsley* for appellants.

(1) If the power to appoint the Superintendent of Buildings is derived from the charter of Kansas City and not from the Building Code, as respondent contends, then, that power is given to the Board of Public Works and not to the mayor. Charter, art. 15, sec. 10, p. 456; Art. 4, sec. 4, p. 176; Art. 10, sec. 1, p. 360; Art. 10, sec. 11;

Art. 10, sec. 8.    (2) If relator was merely the *de facto*
Superintendent of Buildings at the time of his removal,
then he was not entitled to re-instatement, no matter how
he was removed or displaced.   Sheridan v. St. Louis, 183
Mo. 25, 38; 26 Cyc. 263; Stott v. Chicago, 205 Ill. 281, 286;
Moon v. Mayor, 214 Ill. 40.    (3) The Building Code
ordinance, approved March 9, 1908, providing for the ap-
pointment of the Superintendent of Buildings was not
repealed by the present charter, which went into effect
September 4, 1908, unless the ordinance is inconsistent
with the charter.   Charter & Ordinances of 1909, art. 18,
sec. 1, p. 478; Art. 3, sec. 1, cl. 18, p. 151; Art. 3, sec. 1, cl.
35, p. 160.   The charter does not fix the term of office of
the Superintendent of Buildings.  Sec. 1071 of Revised
Ordinances, p. 853. The Building Code makes the term of
the Superintendent of Buildings two years.  (4) Since re-
lator's term of office was two years, and since he was ap-
pointed August 12, 1910, and never re-appointed his term
of office had expired long before his removal on June 1,
1918.   He was at the date of his removal a mere *locum
tenens,* subject to removal at pleasure.   The appointment
of Shinnick, his successor, was enough to accomplish his
removal.   State ex rel. v. Stonestreet, 99 Mo. 361, 376.
(5) If the mayor had the power under the charter to ap-
point relator, then it follows that he could remove rela-
tor under article 4, sec. 2, p. 194, of the Charter.   (6)
Relator's conduct with reference to this trust fund is suf-
ficient to prevent his reinstatement.   State ex rel. Stickle
v. Martin, 195 Mo. App. 366; Secs. 3334, 3341, R. S. 1919.
(7)   The court erred in announcing the conclusion of
law as a finding of fact that the action of defendants in
removing relator was in violation of the charter because
no charges of misconduct or failure of official duty were
made or filed against relator.   The charter does not re-
quire the making or filing of such charges.  See provi-
sions of charter heretofore cited.   (8)   Relator was re-
moved by the head of his department, and the Board of
Public Works had the power to remove relator in the ex-
ercise of its discretion under provision of Art. 15, sec. 10,

of the charter. This provision vests discretionary power of removal in the heads of departments. It is not necessary that charges be made or a hearing had. Good cause in law for the removal is not required. It is not necessary that the person removed be guilty of misconduct, or that he fail to perform his official duty. Under the charter the head of the department is made the judge of the sufficiency of the reasons for removal. State ex rel. v. Crandall, 269 Mo. 44; People v. Whitlock, 92 N. Y. 191; State v. Williams, 6 S. D. 119; Maryland v. Registrar, 59 Md. 283; Scott v. Waterloo, 180 N. W. 156; State v. Boyington, 188 Pac. 777. (9) The court erred in awarding a peremptory writ. Even though the court should find that under the provisions of Article 15, sec. 10, of the charter it was necessary that relator be furnished with a statement of the reasons for his removal as a condition precedent to his removal, yet it does not follow that a writ of mandamus will issue to restore relator because of the failure to furnish such statement. Here are defendants, including the head of relator's department, asking that he be not restored, and setting up several reasons why relator should not be in the position of Superintendent of Buildings. The head of the department by virtue of section 10, and not the court, is to judge of the existence and sufficiency of the reasons. If this court should reinstate relator because the formality of giving him a statement of reasons was not complied with, he will be immediately furnished with the statement and at once removed. Thus a writ of mandamus would give relator no substantial benefit, and the court will not issue its writ of mandamus except to secure for a relator some substantial and practical benefit. Gray v. Berrien Circuit Judge, 171 N. W. 431, 433; Neto v. Consellio, 122 Pac. 975; United States v. Lapp, 244 Fed. 380; State ex rel. Young v. Temperance Soc., 42 Mo. App. 485; State ex rel. v. Finley, 74 Mo. App. 213; State ex rel. Stickle v. Martin, 195 Mo. App. 366.

*John I. Williamson, Darius A. Brown* and *John G. Park* for respondent.

(1) The judicial policy of Missouri has always been to protect incumbents of public office against wrongful discharge during their lawful tenure. Gracey v. St. Louis, 213 Mo. 384; State ex rel. Campbell v. Police Comrs., 88 Mo. 144; State ex rel. Campbell v. Police Comrs., 14 Mo. App. 297; State ex rel. Denison v. St. Louis, 90 Mo. 19; State ex rel. Rundberg v. Kansas City, 206 Mo. App. 17; State ex rel. Reid v. Walbridge, 119 Mo. 383, 395; State ex rel. Mosconi v. Maroney, 191 Mo. 531; State ex rel. Chapman v. Walbridge, 153 Mo. 194; Gregory v. Kansas City, 244 Mo. 523, 546; State ex rel. Pittman v. Adams, 44 Mo. 570; Basse v. St. Louis, 213 Mo. 401; Butterfield v. St. Louis, 213 Mo. 402; Williams v. St. Louis, 213 Mo. 403. (2) Civil service employees under the Kansas City Charter hold during good behavior and cannot be discharged without notice and hearing. Charter, art. 15; State ex rel. Rundberg v. Kansas City, 206 Mo. App. 17; Roth v. State ex rel. Kurtz, 158 Ind. 242; Gregory v. Kansas City, 244 Mo. 523, 546; Gracey v. St. Louis, 213 Mo. 384, 393; State ex rel. Gilmur v. Seattle, 83 Wash. 93; 1 Dillon on Mun. Corp. (5 Ed.) sec. 397; State ex rel. v. Police Comrs., 14 Mo. App. 297, 88 Mo. 144. They therefore hold until removed for cause, after notice and hearing. Gracey v. St. Louis, 213 Mo. 384, 394; State ex rel. v. Maroney, 191 Mo. 531; State ex rel. Denison v. St. Louis, 90 Mo. 19. (3) Relator was in the competitive class and protected by civil service rules of the city charter, and therefore could not be lawfully removed ''without first having received a written statement setting forth in detail the reasons therefor.'' Charter, art. 15 sec. 10. The purpose of this provision was and is to afford the employee an opportunity to be heard. Truitt v. Philadelphia, 221 Pa. St. 331, 339; Ridgeway v. Fort Worth, 243 S. W. 748. (4) No charges against relator were served and no reasons given for the removal until after this suit was filed. Exhibit 3, assigning as reasons ''for

cause and the good of the service," was delivered after the discharge and was so vague as to be a nullity. State ex rel. Norton v. Lupton, 64 Mo. 415, 417; Truitt v. Philadelphia, 221 Pa. St. 331, 340; Dullam v. Wilson, 53 Mich. 392, 407; Butler v. White, 83 Fed. 578. The law for a motion must be strictly pursued. State ex rel. v. Morehead, 256 Mo. 683; 692; State ex rel. Mosconi v. Maroney, 191 Mo. 531, 548; State ex rel. v. Sheppard, 192 Mo. 497, 510; State ex inf. v. Hedrick, 241 S. W. 411; 2 Dillon on Mun. Corp. (5 Ed.) sec. 468; Truitt v. Philadelphia, 221 Pa. St. 331, 337; State ex rel. v. Sullivan, 58 Ohio St. 504, 65 Am. St. 78; State ex rel. v. Board, 95 Ohio St. 276, 287. This attempt to discharge without first delivering written statement of reasons was illegal, and must result in peremptory writ for re-instatement. State ex rel. Rundberg v. Kansas City, 206 Mo. App. 17; Truitt v. Philadelphia, 221 Pa. St. 331, 339; State ex rel. v. Board, 95 Ohio St. 276, 287. (5) The relator was entitled to notice or hearing because he was removable only for cause. Charter, art. 15 sec. 10, par. 2; Gregory v. Kansas City, 244 Mo. 523, 546. Discharge "for cause" and discharge "for the good of the public service" are synonymous. "Cause" is a substantial shortcoming detrimental to the efficiency of the service. 2 Dillon on Mun. Corp. (5 Ed.) sec. 477; Roth v. State ex rel., 158 Ind. 242, 254; Truitt v. Philadelphia, 221 Pa. St. 338. An employee removable for cause is entitled to be notified and heard. State ex rel. v. Walbridge, 119 Mo. 383, 394; State ex rel. Denison v. St. Louis, 90 Mo. 19, 22. (6) Relator was *de jure* Superintendent of Buildings May 31, 1918. Eads v. Wooldridge, 27 Mo. 251, 254. (a) The Board of Public Works had so dealt with him. (b) No other person could have been appointed. The appointment in effect was made by the Civil Service Board. Charter, art. 15, sec. 16; Gregory v. Kansas City, 244 Mo. 523, 545; People v. Loeffler, 175 Ill. 585; Attorney-General. v. Tillinghast, 203 Mass. 539, 17 Ann. Cas. 449; People ex rel. Beck v. Aldermen, 42 N. Y. Supp. 545, 548; 1 Dillon on Mun. Corp. (5

Ed.) sec. 399, p. 693; 22 R. C. L. 422; 29 Cyc. 1371; Mechem on Pub. Off., secs. 102, 114; Johnston v. Wilson, 2 N. H. 205, 9 Am. Dec. 50. (c) Relator being the person designated by the law to fill the office, clerical or ministerial omissions are of no consequence. State ex rel. Campbell v. Police Comrs., 14 Mo. App. 297, 302; People ex rel. Merritt v. Civil Service Board, 43 N. Y. Supp. 191, 13 App. Div. 309; McKean v. Goutier, 132 Ill. App. 376, 380. (d) Relator being the person designated by the law to fill the office, and being in possession, it will be presumed that every rightful thing was done necessary to invest him with the office. State ex rel. v. Police Comrs., 14 Mo. App. 297, 88 Mo. 144; Throop on Pub. Off., sec. 300; 22 Am. & Eng. Ency. Law (2 Ed.) 1266. Failure to produce a contrary record raises this presumption. Allen v. Jessup, 192 S. W. 720, 723; McCord v. Schaff, 279 Mo. 558; Willits v. Railroad, 221 S. W. 65. (e) Appellants estopped to deny the regularity of the appointment. State ex rel. v. Police Comrs., 14 Mo. App. 307. Lawful title and possession were united in relator. Mechem Pub. Off., sec. 316. (7) Ordinance 38919, approved March 9, 1908, was as to tenure repealed (or amended) by Article 15 of the charter, which became effective September 3, 1908. All positions in the competitive class came under the requirements and protection of the civil service provisions. Charter, art. 15, secs. 6 and 10; Gregory v. Kansas City, 244 Mo. 523, 546. (8) This removal cannot be justified by Article 4, sec. 25. State ex rel. Rundberg v. Kansas City, 206 Mo. App. 17. (9) It is no answer to make that relator will be removed *instanter* upon restoration. State ex rel. Pittman v. Adams, 14 Mo. 570, 588; Truitt v. Philadelphia, 221 Pa. St. 331.

LINDSAY, C.—This is a proceeding in mandamus to compel re-instatement of relator in the position or employment of Superintendent of Buildings, of Kansas City, and to require the payment to him of the compensation provided for that position during the period of his discharge from it, upon the claim that his discharge or re-

moval was unlawful. The trial court granted the relief asked, and the city, and those of its officials who were made defendants, have prosecuted this appeal. The determination of the case involves in a general way a few main questions: The nature of the position held by relator, and of the tenure by which he held it; the character of the authority to be exercised in removing him, and the manner of its exercise; the form of relief sought. Incidentally other questions arise out of the court proceedings.

On March 9, 1908, there was approved an ordinance of Kansas City, numbered 38919, which is referred to in the record as the "Building Code," which regulated the construction, equipment, alteration, repair and removal of buildings." It provided that "the head of the Department of Buildings shall be the Superintendent of Buildings; that he should be appointed by the mayor and confirmed by the Upper House of the Common Council, at the beginning of the fiscal year 1908, and biennially thereafter, and that he should hold his office for the term of two years and until his successor should be confirmed, unless sooner removed from office. This ordinance, and these provisions, were pursuant to the charter then in force, the charter of 1899.

On September 3, 1908, the present charter of Kansas City took effect. This charter made certain changes in the method of appointment and tenure of office of certain officers, and relator contends that certain of the changes are applicable to the office of Superintendent of Buildings. This charter contains, in Article XV, the civil service law; creates a commission; and prescribes its powers and duties in the examination and selection of candidates for positions or appointments in the classified civil service of the city. Section 3 of the article divides the civil service of the city into the exempt service, and the classified service. Section 4 designates the elective, and other officers who are within the exempt service, that is, those appointive who are exempt from examination for appointment, and are not within the special protection of the

civil service provisions. The members of the Board of Public Works and its secretary are among those designated as in the exempt class. The Superintendent of Buildings is not one of those so designated. Section 5 provides that the ''classified service shall comprise all officers and all positions in the city service not specifically designated in the exempt service—and shall be arranged into two classes, to be designated respectively as the competitive class and labor class.'' By Section 6 ''the competitive class shall include all positions now existing or hereafter created of whatever function, designation or compensation in each and every branch of the civil service of the city except such positions as are in the exempt service, or the labor class.'' The office or position of Superintendent of Buildings is not in the labor class, and is in the competitive class, beyond question. Under Section 18 of the article on civil service it was provided that the incumbents of all positions at the time the charter should take effect, coming within the competitive class of the classified service, might continue in service until the beginning of the fiscal year 1910, and until the civil service board should have secured an eligible list and promulgated rules as provided by said Section 3, whereupon said incumbents should be deemed to have vacated their positions. Until such time, it was provided, appointments and removals should be made and vacancies filled as elsewhere provided in this charter.

There are several sections of the civil service article which set forth the conditions, and methods to be pursued, in the examination of applicants for positions in the competitive service. Section 16 provides that the head of a department or office in which a position in the classified service is to be filled shall notify said board of that fact, and the civil service commission shall certify to the appointing officer the name and address of the candidate standing highest upon the eligible list for the class or grade to which said position belongs. The same section further provides: ''The appointing officer shall notify said commission of each position to be filled separately,

*and shall fill such place by the appointment of the person certified to him by said commission therefor.''*

On July 22, 1910, an examination was held by the commission, of candidates for the position of Superintendent of Buildings. On August 12, 1910, the civil service commission notified relator in formal manner that in this examination he had received a rating of 94.15 per cent, and that his rating entitled him to first place on the eligible list. Relator presented this notice to the mayor, Darius A. Brown. On August 17, 1910, the mayor delivered to relator a certificate as follows: ''This is to certify that on the 17th day of August, 1910, the Mayor of Kansas City, Missouri, did appoint F. B. Hamilton to fill the office of Superintendent of Buildings of said city.''

This certificate it may be noted was made upon a form originally containing the recital that the appointment was made ''by and with the consent of the Upper House of the Common Council,'' at a meeting duly held. This recital was erased in the certificate. On the same day the relator filed with the city clerk this appointment, with his oath of office subscribed thereon, filed the required bond, and took charge of the office of Superintendent of Buildings, and was so recognized by the Board of Public Works, and continued from that time in the discharge of the duties of that office until his removal on May 31, 1918.

The circumstances attending relator's removal as shown by the record are as follows: On May 31, 1918, the secretary of the Board of Public Works informed relator that he had been requested to demand relator's resignation. Relator refused to resign, and inquired the reason for the demand. The secretary replied: ''Well, they think we can get better results with somebody else.'' The relator answered that he would not resign. The secretary said, ''Well, then, if you will not resign the board will fire you when they meet this afternoon.'' On June 1, 1918, the relator received a letter from the secretary as follows: ''The Board of Public Works, at its regular meeting on May 31st, 1918, removed you from the position of

Superintendent of Buildings, for cause and the good of the service, same to take effect June 1, 1918.'' The removal became effective in fact on that day. The record does not show that any controversy had arisen between relator and the members of the Board of Public Works over the manner in which he had conducted the office, or, that any complaint by them had been made to him on that subject. It appears, however, that upon an occasion not long prior to relator's removal, W. A. Durham, who was the chairman of the Board of Public Works, had inquired of relator as to the number of men needed by him as Superintendent; that relator answered that he thought he could get along with one additional man. Mr. Durham testified that it was his desire to cut down expense and reduce the number of men under the relator, but does not testify that a demand was made upon relator to reduce his force, or that relator refused to comply with any request made upon that subject. Mr. Durham testified also that the reason he called for relator's resignation was that he could not see the necessity for so large a force of inspectors. But it appears from the provisions of Section 27 of Article IV of the charter that the Board of Public Works, by resolution confirmed by ordinance of the Common Council, was empowered to ''fix a general schedule of the number, grade and compensation of all agents and employees in the department under its control.'' And the circumstances referred to and the reason given by Mr. Durham were not pleaded by the defendants in their return to the writ.

The relator's case is planted upon the ground that he was at the time of his removal Superintendent of Buildings *de jure,* and that he was such by virtue of the provisions of the charter of the city, and that his removal was accomplished in violation of the provisions of the charter. Defendants' adverse contentions, made in somewhat alternative form, are to be noticed. They insist that relator was merely the *de facto* Superintendent of Buildings at the time of his removal: First, that if his tenure was under the charter, it was invalid for the rea-

sons that by the charter his appointment could be made only by the Board of Public Works, and that he was not so appointed; next, that the charter did not operate to repeal the clause of the "Building Code" ordinance, above mentioned, whereby it was provided that the Superintendent of Buildings should be appointed by the mayor for the definite term of two years; and that this term had long before expired. An examination of the various provisions leads irresistibly to the conclusion that the provisions of the charter operated as a repeal of so much of the "Building Code" ordinance as made the Superintendent of Buildings appointive by the mayor, "by and with the consent of the Upper House of the Common Council," and made his term of office two years. So much of the "Building Code" ordinance is inconsistent with the charter, and the provisions of Article XV therein. Under this article the office of Superintendent of Buildings, referred to in the "Building Code" ordinance, became vacant, when the civil service commission began to function. The office then came within the competitive class of the civil service. Its tenure, and the conditions of appointment and the manner of selection of personnel, were controlled by these plain charter provisions. The charter, in those respects, covers the whole subject-matter. [Gregory v. Kansas City, 244 Mo. 546, and cases there cited.] Beyond doubt, an ordinance providing that an office shall be filled by the mayor by and with the consent of the Upper House of the Common Council, for a term of two years, is not consistent with later organic provisions whereby that office is to be filled only by a person securing rating upon competitive examination, and making the certificate of the examining board a mandate for his appointment by the appointing officials, and making his term (State ex. rel. Rundberg v. Kansas City, 206 Mo. App. 17; Gregory v. Kansas City, 244 Mo. 523) one during good behavior. Upon the foregoing there arises the question, raised by defendants, that if the power to appoint relator was derived from the charter and not from the "Building Code" ordinance, then that power is

given by the charter to the Board of Public Works, and not to the mayor; that relator was not appointed by the Board of Public Works, but by the mayor; hence the appointment was without authority. In support of their contention upon this point, the defendants cite Section 10, Article XV, of the charter, which provides that all appointments to positions in the city service shall be made by "the respective heads of such departments" unless otherwise provided in the charter; and cite Section 1 of Article X, wherein there was "established with the city a department to be known as the Board of Public Works," which by other provisions of the same article should control "the construction, repair, alteration and removal of all buildings . . . and the issuing of permits therefor," and should also have power to make "all necessary rules and regulations for the government of its department not inconsistent with this charter or any ordinance of the city." In the same connection they also cite Section 4 of Article IV, which empowers the mayor to appoint all officers not otherwise appointed. The charter statement is: "He shall have power to appoint, in the manner provided by this charter, all city officers, agents and employees not elected by the people or otherwise appointed."

The inquiry now arrives at the question of the validity of relator's appointment, under the facts shown in the record, under the provisions of the charter, and under the applicable rules of law. This situation is disclosed: A vacancy existed. The charter contemplated that the Board of Public Works inform the civil service board of the vacancy—the position to be filled. The relator sought the position, which is in the competitive class, and stood the examination as required, and received a certificate from the examining authority certifying that he was first on the eligible list for that position. Then became applicable the provision of the charter, that "the appointing officer . . . shall fill such place by the appointment of the person certified to him by said commission therefor." The place is within the department of the Board of Public

Works, a board appointed by the mayor, and Section 6 of Article IV of the charter, among its provisions concerning the mayor, has this provision: ''He shall *ex officio* be a member of all appointive boards, but without the right to vote therein.'' The formal appointment of relator, the recognition of the official certificate of the civil service board, heretofore set out, was executed by the mayor, as such, and pursuant to the action and communication of the civil service board, and was so recognized and accepted by the Board of Public Works. The appointment of relator to the position was obligatory upon the Board of Public Works, and upon the mayor to the extent of his headship and *ex officio* relation to that board.

Defendants say, in their principal brief: ''The appointing board or officer must appoint the person named by the civil service board, and none other. The appointing power is given no choice or discretion in making appointments. The person named by the civil service board must be appointed.'' There was no evidence introduced of an entry upon the records of the Board of Public Works showing formal appointment of relator, or of anyone else to the position, during relator's incumbency. The testimony of the city clerk was that the appointment above set out was the only one to that position, as shown by the records of his office. Section 17 of Article XV provides: ''Immediate notice in writing shall be given by the appointing power to said board (Civil Service) of all appointments, permanent and temporary, and a record of the same shall be kept by said board.'' There is no evidence in the record, nor any offered to show, that this notice was not given by the Board of Public Works to the Civil Service Board, nor that the latter had no record of it. During the period of relator's incumbency, nearly eight years, his salary was regularly audited, and paid under the provision of the charter whereby that board by resolution, approved by appropriate ordinance of the Common Council, fixed the ''number, grade and compensation of the officers, agents and employees of the Board of Public Works.''

The appointment of the relator by the mayor must be regarded as the act of the Board of Public Works, done through him, as the head of that board which had no discretion to exercise in making the appointment, but was required under the plain terms of the charter to appoint relator, the person designated by the civil service board for that place. [Gregory v. Kansas City, 244 Mo. 545; State ex rel. v. Kansas City, 206 Mo. App. 17; State ex rel. v. Kansas City, 250 S. W. 927; People v. Loeffler, 175 Ill. 585; People ex rel. Beck v. Aldermen, 42 N. Y. Supp. 191; McKean v. Gouthien, 132 Ill. App. 376; 22 R. C. L. 422; 1 Dillon on Mun. Corp. (5 Ed.) sec. 399.] The conclusion reached is that relator held the position not merely as an officer *de facto,* but *de jure,* and was entitled to the rights of an officer duly appointed and in possession of the office.

The acts constituting the removal of relator in the first instance were done by the Board of Public Works. Certain action taken by the mayor will be referred to later. The authority to remove, relied upon by the defendants, as vested in the Board of Public Works, is found in Section 10 of Article XV of the charter. For convenience of reference, under the manner in which attorneys for defendants urge their construction of the provision, it is fully set out:

"Such heads of departments shall respectively have power to remove or discharge any person holding any office, position, or employment in their respective departments whenever, in their opinion, the good of the public service requires the exercise of such power. It shall be the duty of a discharging officer, upon request of a discharged person, at any time after discharge, to give such person a correct statement in writing of the reasons for his discharge. No person in the city's service shall be removed, reduced in grade or salary, or transferred because of political or religious beliefs or opinions of such persons; nor shall any person in the competitive class of the city service be removed, reduced in grade or salary or

transferred without first having received a written statement setting forth in detail the reasons therefor, and at the option of the person who shall have been removed, reduced, or transferred, a copy of such statement shall be filed in the office of the Civil Service Commissioners, together with reply, if any made thereto, by the person removed, and the whole shall be filed and preserved in the office of said commissioners and be open to public inspection."

Counsel for defendants construe these provisions to mean that there is only one limitation upon the power of heads of departments to remove or discharge anyone "whenever in their opinion the good of the public service requires the exercise of that power." They concede that removal or discharge cannot be made "because of political or religious beliefs of such persons." Barring that limitation, their argument is that there is unrestricted right to remove or discharge. It may be well to note the language of the sentences above quoted. The first sentence, in giving power, is general, gives power to "remove or discharge any person." This applies to the competitive class and the labor class. The next sentence requires "the discharging person, at any time after discharge, to give such person a correct statement in writing of the reasons for his discharge." A person is "discharged" from an employment. The next sentence does not use the word "discharge" at all. It contains two limitations. The first clause expressly withholds the power to remove, reduce in grade or salary, or transfer any person in the city's service because of political opinions or religious belief. The second clause has reference to the competitive class alone. No one in this class of the city service shall be "removed, reduced in grade or salary or transferred without *first having received a written statement setting forth in detail the reasons therefor.*"

Continuing, the right to reply in writing is given, and if the person be removed he may require copies of the charges and of his reply to be filed with the civil service board. This board may investigate an abusive ex-

ercise of the power to remove, "and if they shall find
that any such violation of the provisions of the *intent* and
*spirit* of this article has occurred, they shall make re-
port thereof to the mayor and the officer or tribunal hav-
ing power under this charter to remove such officer, board,
head of department, or persons, and such report shall be
sufficient cause for removal of such guilty officer, board,
head of department, or person." Clearly, the framers of
the charter gave to the board or heads of departments
power to remove a person in the competitive class. They
gave it as a necessary and wholesome power, to be exer-
cised for the good of the public service, and with that "in-
tent and spirit," but, equally clearly, they made the giv-
ing to the person affected of a written statement setting
forth in detail the reasons, and opportunity to reply and
to be heard thereon, a condition precedent to the exer-
cise of the power. The people of Kansas City adopted
this as a law governing the practice to be pursued in re-
moving persons in the competitive class of the civil ser-
vice of the city. In function it is administrative, but in
quality of requirement it is: "A law which hears before it
condemns; which proceeds upon inquiry, and renders
judgment only after trial." The relator received his au-
thority from the law, and was discharging some of the
functions of government. He was an officer. [State ex
rel. v. Bus, 135 Mo. 331; Gracey v. St. Louis, 213 Mo. 394.]
He held the office, not for a specified term of years, but,
until and subject to removal, in a lawful manner, for the
good of the public service of the city. [Gregory v. Kan-
sas City, 244 Mo. 523; State ex rel. Rundberg v. Kansas
City, 206 Mo. App. 17; State ex rel. Rawlings v. Kansas
City, 250 S. W. 927; Gracey v. St. Louis, 213 Mo. 394;
State ex rel. v. Maroney, 191 Mo. 531; State ex rel. Den-
nison v. St. Louis, 90 Mo. 19; Roth v. State ex rel. Kurtz,
158 Ind. 242; State ex rel. Gilmur v. Seattle, 83 Wash. 91.]
The "written statement setting forth in detail the rea-
sons" is a prerequisite. It is making of this written state-
ment and notice of it to the person affected which com-
pletely vests authority to proceed. The purpose of it is

to afford the party complained against an opportunity to be heard. [Truitt v. Philadelphia, 221 Pa. St. 331; Ridgway v. Fort Worth, 243 S. W. 740, and authorities above cited.] A written statement delivered after the decision and act of removal, stating that the removal was "for cause and for the good of the service," neither in time, nor in substance complies with the charter provision. [State ex rel. Norton v. Lupton, 64 Mo. 415, and see also State ex rel. v. Wells, 210 Mo. 601.] When the defendants, members of the Board of Public Works on the 31st day of May, 1918, assumed to remove relator, they did so without having first complied with a requirement essential to their possession of authority to remove him.

There is another ground, and another act, upon which defendants rely in their contention that relator was lawfully removed. On the 27th day of July, 1918, the mayor addressed a communication to the Upper House of the Common Council. He began by saying that the "Building Code" ordinance provided that the mayor should appoint the Superintendent of Buildings, and then states that the charter, subsequently adopted, was construed to give to the Board of Public Works the power to remove the Superintendent of Buildings. He recites the fact that on June 1, 1918, the relator "was suspended and discharged" by the Board of Public Works "for the good of the service," and that relator had instituted proceedings in mandamus. He then continues, saying that relator "on July 27, 1918, filed an amended petition and writ in said cause, claiming that any attempt to remove him should have been made by the mayor." He continues: "The facts with reference to the removal of Mr. Hamilton had been presented to me by said Board of Public Works and I ratify and confirm their act in discharging him."

The amended alternative writ, set forth in the abstract, after reciting relator's competitive examination, and rating, and the certifying thereof by the civil service board, pursuant to the charter, further recites that the petitioner "pursuant to the said charter and ordinances

(no particular ordinance having been mentioned) was duly and properly appointed by the mayor of Kansas City, to fill the position and office of Superintendent of Buildings." The amended writ makes no charge that the mayor is the official having the power of removal, but charges the removal was by the Board of Public Works, and charges the unlawfulness thereof in failure of the defendants, members of the Board of Public Works, to furnish the petitioner with the written statement setting forth in detail the reasons for removal.

Urging this action of the mayor as conclusive on the question of relator's removal, the defendants say that if the mayor had power under the charter to appoint relator, then it follows that he could remove him. They cite Section 2 of Article IV of the charter, which provides: "Any officer, or the incumbent of any board appointed by the mayor, whether appointed with or without confirmation, may be suspended by the mayor." Further provision of that section is that the mayor shall notify the Upper House of the Common Council of any such suspension, and unless the Upper House shall not later than its second session by two-thirds vote declare that the officer ought to be re-instated, the said officer shall be considered to be removed and the mayor shall notify him of his removal. The charter mentions many officers as in the exempt class whom the mayor shall appoint. These are outside of the civil service provisions, whether their appointments must be confirmed or not. In respect of officers or persons within the civil service, the mayor, in his action, is subject to the civil service provisions. In the action foregoing it is doubtful if the mayor assumed to act under the provision last mentioned. He did assume to ratify the act of the Board of Public Works. The act of that board was one within its powers under the charter, but it proceeded to the act without the step prerequisite to the exercise of its power. Its resultant act was unlawful, and the communication of the mayor that he ratified this unlawful and ineffective act, added nothing to its force.

The decision in State ex inf. v. Crandall, 269 Mo. 44, has little bearing upon the question here at issue. No civil service provision was there involved. The statute there in issue, in giving to the Governor power to appoint, also gave to him power to remove for official misconduct, "upon his being fully satisfied that the commissioner or commissioners charged is or are guilty of the alleged official misconduct," and that statute not only did not make express provision for notice and hearing, but, from all its terms, was held by a divided court, by necessary implication, to give to the Governor the power of removal under the condition stated in the statute. In this case under the pleadings and the evidence the political opinions of the relator did not come into sharp issue, but, if the defendants are right in the contention they make here, an officer in the competitive civil service of the city can be removed summarily, and at discretion, by the appropriate board or officer, on account of his religious faith or political opinions, and a formal notice, given after the removal, that the act was done "for cause and for the good of the service" would be a sufficient and conclusive justification in law. The only permissible grounds for removal are misconduct, or inefficiency of the officer, inconsistent with proper service to the city. The facts constituting these grounds are to be set forth and found as a basis for removal. If this be not true, the clause of the charter assuming to protect the officer in his religious faith, or political opinions, is of little avail to him; because no demonstration would be required of the permissible grounds of removal.

Defendants concede that such an officer cannot be removed on account of his religious faith or political opinions, and say that is the only limitation upon removal at discretion. It is not, as has been said, but that absolute limitation can stand in its integrity only by enforcement of the requirement that the affirmative facts, which do justify a removal, shall be set forth as the charter provides. Defendants have set forth at length arguments in

favor of the policy of right of removal at discretion. These need not be noticed. Any attempt to deal here with the policy embodied in civil service laws is disclaimed. This case deals solely with the rights of an individual, in a particular instance, under a law that has been made.

Some matters arising from the proceedings in the trial court require mention. The pleadings sufficiently raised the essential issues that have been discussed. The defendants set up that relator had not at any time demanded a statement in writing of the reasons for his discharge, and did not at any time before suit demand that he be re-instated. It was the duty of the defendants, before proceeding to remove relator, to furnish the statement as their warrant of authority so to proceed. There is no testimony tending to show that relator waived his right to receive this statement, but the contrary; and the evidence shows that shortly after the act of removal, Colonel John F. Richards appeared in behalf of relator before the Board of Public Works, at a meeting at which relator was present, and asked his re-instatement, which was refused.

The defendants in their return averring that relator was discharged for the good of the service, assign in detail certain reasons in the form of allegations of misconduct on the part of relator. The first was a charge that relator had failed to keep strict account of deposits of money, made with him to cover the wages of linemen in cutting wires, made necessary in moving houses, and under the provisions of the "Building Code" ordinance, and did not turn over to Shinnick, who was appointed to succeed relator, the sum of $70, said to be the sum of said deposits on hand, until July 13, 1918. The other specifications against relator deal with charges that certain employees of relator were permitted to devote much time in political work in the city election of April, 1918; that one employee devoted a part of his time to contracting, and building houses; that three others during a period of seven days rendered no service to the city, but that relator certified the payrolls of these employees without de-

duction, and it was also alleged that relator levied and collected an assessment of $2.50 each on the employees in his department for political campaign purposes, in April, 1918. The relator filed a reply.

The trial court, upon these issues of fact, and upon the question of their sufficiency, as found, to sustain the defendants, held against the defendants. This finding will not be disturbed here, first, because the trial court had the witnesses before it, and the evidence in the record is not such as compels the conclusion that the trial court erred in that regard. But there is another material consideration. This is not a proceeding whose direct purpose is to review the action of the Board of Public Works, although the validity of its defense could rest only upon showing that this board, in proceeding to remove relator, had taken the measures necessary, as a matter of law, to clothe itself with power to remove. Had it done so, and taken the evidence thereon, shown in the record, a materially different question would be presented here or in any court proceeding arising out of the removal of relator.

The actual situation here can be cleared up by reference to the decision in State ex rel. Norton v. Lupton, 64 Mo. 415. Lupton had been elected and was city marshal of Joplin. The city council undertook to remove him, under an ordinance providing for removal, and the council did make an entry of record declaring him removed, and his office vacant, and proceeded to appoint Norton in his place. Norton instituted a *quo warranto* proceeding. This court said, at page, 416: ''The following record was read in evidence to establish the amotion of the defendant: 'Charges were preferred, and filed by Judge Jacon Hogle, affiant, against J. W. Lupton, defendant, for misconduct in office and neglect of duty. Signed: Lee Taylor, Mayor; J. W. Ried, Clerk. April 15, 1864. The case of the City of Joplin v. J. W. Lupton was taken up and some additional evidence taken in behalf of the defendant; the board then retired for a few minutes, and

returned the following verdict, viz: The Board of Coun-
cilmen find J. W. Lupton guilty of neglect of duty and
misconduct in office, and, on motion, it was resolved that
he be discharged from the office of city marshal and said
office is declared vacant.' '' The trial court awarded a
writ of ouster. This court did not discuss or refer to the
evidence offered in the trial court upon misconduct, but
disposed of the case on appeal as follows, 1. c. 417: ''The
record of proceedings before the city council, read in evi-
dence, does not contain the specific charges against the de-
fendant, if indeed any such were ever made. The general
allegation of misconduct in office and neglect of duty is
too vague and indefinite. The specific acts complained of
should have been stated, in order that it might appear,
as a matter of law, that the council had jurisdiction of the
alleged offense. The proceeding authorized is summary,
and the record should be precise. No intendments can be
indulged as to the jurisdiction and regularity of the pro-
ceedings of the city council in such cases. The record is
insufficient to show a lawful amotion.'' The record here
is in a like condition, and it is unnecessary for this court
to express an opinion upon the effect of charges and evi-
dence of misconduct, put forward in the trial of this
cause, but not made nor offered, nor any made or offered,
in the first instance in the direct proceeding to remove.

Having finished the hearing of the evidence then of-
fered and introduced, the court, on the 2nd day of June,
1921, took the case under advisement. Thereafter, on
November 7, 1921, pursuant to notice given, the relator
asked leave to amend his amended petition and amended
writ by inserting therein allegations of certain increases
in the salary of the Superintendent of Buildings, respec-
tively made by the Board of Public Works through reso-
lutions confirmed by the Common Council. The court,
over the objection of defendants, permitted the amend-
ments. The resolutions and the ordinances which ac-
companied and confirmed them were offered, and were
admitted in evidence over the objections of defendants.
The relator's salary had been $2000 per annum, and he

ordinances introduced it appears that the salary on June was removed June 1, 1918. Under the resolutions and 5, 1918, was increased to $2700 per annum; on August 5, 1919, it was increased to $3000 per annum, and on July 16, 1920, it was increased to $4000 per annum. The amount of salary accrued and sued for made the case one within the appellate jurisdiction of this court. The action of the court in allowing the amendment and in admitting the evidence is not assigned as error here, and is not briefed nor argued by defendants.

It appears that on or about June 1, 1918, or immediately after the order for the removal of relator was made, Mathew Shinnick was designated as his successor, and took possession of the office. The trial court, among others, made this finding: "The court further finds that the removal of relator was intentional, manifested a settled policy, and that it would have been useless for plaintiff or any one in his behalf to have made further demands or efforts to secure his re-instatement."

It is a doctrine well recognized that one rightfully and lawfully in an office or position, performing the duties and entitled to the salary thereof, but who has been wrongfully deprived of his place by the illegal appointment of another may have his remedy in mandamus to secure re-instatement (Spelling on Injunction (2 Ed.) sec. 1576; 26 Cyc. 260; State ex rel. v. Miles, 210 Mo. 165, 173) ; and payment of the salary of which he has thus been deprived (State ex rel. v. Walbridge, 153 Mo. 204; State ex rel. v. Brodie, 177 Mo. App. 382; State ex rel. Rundberg v. Kansas City, 206 Mo. App. 17; State ex rel. Rawlings v. Kansas City, 250 S. W. 926).

The argument that relator has not performed the duties of the office since his removal, and that another has done so and has been paid for so doing, cannot avail. That argument was answered in State ex rel. v. Walbridge, 153 Mo. where it was said, at page 203; "The legal right to the office carried with it the right to the salary. The board by its wrongful act could not deprive

him of his legal right.'' And later, under similar circumstances, it was said in Gracey v. St. Louis, 213 Mo. 1. c. 397: ''Here plaintiff was not 'removed' as that term is understood in the law. What was done was not legally done, and therefore had no legal effect. Another was assigned his duties and that other was paid by the city. That was the city's affair, if it chose to take such course with its attending consequences.''

The judgment of the circuit court awarding the peremptory writ should be affirmed. *Small, C.,* concurs.

PER CURIAM:—The foregoing opinion of LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.