THE STATE EX REL. L. D. THOMPSON, State Auditor, v. HARRY S. TRUMAN ET AL., Judges of County Court, FRED A. RICHARDSON, Assessor, and LEO KOEHLER, Surveyor, Comprising County Board of Equalization and County Board of Appeals, and ROBERT L. HOOD, Clerk of County Court, of Jackson County.—4 S. W. (2d) 433.

Court en Banc, March 17, 1928.

*North T. Gentry*, Attorney-General, and *L. C. Cunningham,* Assistant Attorney-General, for relator.

*Fred A. Boxley* and *Charles L. Carr* for respondents.

WHITE, J.—The State Auditor brings into question and seeks to have quashed an order of the County Board of Appeals of Jackson County, relating to the income tax of Fred W. Fleming.

Fleming, October 27, 1920, was appointed by the District Court of the United States for the Western District of Missouri, Receiver in Missouri and Kansas of the Kansas City Railways Company, and served in that capacity until and including the year 1926. His compensation was allowed by said district court and taxed as cost in the court proceedings. During the year 1926, he received $74,875, which was in part for services rendered for prior years as well as for the year 1926. He filed his income tax return with the Assessor of Jackson County for the year 1926, but did not include as taxable income the sum so received. The Assessor of Jackson County decided that it should be included in the taxable income, assessed it accordingly, and so made his return to the Board of Equalization of Jackson County. Fleming took an appeal to the County Board of Appeals and it made the following order:

"Now appears Col. Fred Fleming by attorney before the Board of Appeals of Jackson County, Missouri, and files brief regarding the merit of his contention that he has been a Federal employee and should not be forced to pay a state income tax on his income as a receiver for the Federal court.

"The Board finds that said income received as receiver for the Federal court is exempt and orders that said Col. Fred Fleming be not entered on the state income tax rolls so far as his income as receiver is concerned."

Thereupon the Attorney-General on behalf of the State of Missouri brought this proceeding at the relation of L. D. Thompson, State Auditor, asking this court to quash the above order, on the ground that the income received by Fleming, as receiver of the Federal court, is subject to taxation under the state income tax law.

I. Respondent asserts that Fleming was an officer of the United States within the terms of the Federal Constitution, and the relator concedes that if he were an officer his income is not subject to taxation.

The State Income Tax Law, Section 13109, Revised Statutes 1919, provides that "the compensation of public officers for public service shall not be computed as a part of the taxable income in such cases where the taxation thereof would be repugnant to the Constitution."

This provision was changed by the Act of 1927, and the exemption appears now in Section 13110, Laws 1927, p. 479, in a little different form.

"The Constitution," as the term is used in this statute, refers to the Federal Constitution as well as to the State Constitution.

What is an officer of the United States?

Article II, Section 2, of the Constitution of the United States provides: "The Congress may, by law, vest the appointment of such inferior officers, as they think proper, in the President alone, in the courts of law, or in the heads of departments."

The courts of the United States are creatures of Congress, under the Constitution, and Congress is authorized to make all laws necessary and proper for courts to carry into execution the powers vested in them. One of the powers granted to the Federal courts is to appoint receivers. It is a prerogative of a court of equity, to aid in the exercise of its jurisdiction.

In support of its position relator cites as the principal case Metcalf & Eddy v. Mitchell, 269 U. S. 514. That case gives a definition of an officer (l. c. 520), as follows:

"An office is a public station conferred by the appointment of government. The term embraces the idea of tenure, duration, emolument and duties fixed by law. Where an office is created, the law usually fixes its incidents, including its term, its duties and its compensation."

It was held by this court in Hastings v. Jasper County, 314 Mo. 144, 282 S. W. 700, that a probation officer appointed by the circuit judge sitting as a juvenile court was a public officer. It was said (l. c. 701):

"The right, authority and duty are created by statute. He is invested with some portion of the sovereign functions of the government to be exercised for the benefit of the public, and is consequently a public officer within the definition given by this court."

In State ex rel. Hamilton v. Kansas City, 303 Mo. 50, it was held that a municipal superintendent of buildings was a public officer. It was said (l. c. 67):

"The relator received his authority from the law, and was discharging some of the functions of government. He was an officer. [Citing cases.] He held the office, not for a specified term of years, but until and subject to removal, in a lawful manner."

In State ex rel. Zevely v. Hackmann, 300 Mo. 59, it was held that the secretary of the State Board of Equalization was a public officer, although he was not a member of the board. In that case a number of definitions of "officer" are given. The court noted that the definitions varied with the law of particular jurisdictions, but (l. c. 67) "all agree substantially that if an officer receives his authority from the law and discharges some of the functions of government he will be a public officer." [Citing cases.] And, "An office is a public charge or employment, and the term seems to comprehend every charge or employment in which the public are interested." Then: "In the most general and comprehensive sense a 'public office is an agency for the State and a person whose duty it is to perform this agency is a public officer.'"

A receiver of the Federal court is appointed by the court, a part of the court's machinery, and he is a necessary agency through which the court discharges its governmental functions. When he has custody of property under his appointment it is *in custodia legis*, and all his acts in relation to it are official.

The relator claims that a receiver is an officer only in the sense that an attorney at law is an officer of the court.

Corpus Juris, vol. 6, p. 568, thus defines the office of an attorney: "An attorney does not hold an office or public trust, in the constitutional or statutory sense of that term, but is an officer of the court, exercising a privilege or franchise." In a footnote from a Federal case (l. c. 568) : "The profession of an attorney and counsellor is not like an office created by an act of Congress which depends for its continuance, its powers, and its emoluments, upon the will of its creator, and the possession of which may be burdened with any conditions not prohibited by the Constitution."

The position of an attorney as an officer of the court differs from that of a receiver. He is not appointed by the court; he received his compensation, not by any order of court, but by agreement with his client. His duties are not fixed by any statute nor any laws except such as concern the general propriety of his conduct. He is not an arm of the court; he does not discharge any functions of government but exercises a franchise.

A receiver appointed by the Federal Court is a Federal officer.

II. But the income of the receiver of a Federal court is not subject to taxation by the State, because he is an *instrumentality* of the Federal court, whether he be considered an officer of the Federal Government or not. In the consideration of his relation to the Government we are necessarily controlled by the decisions of the Federal courts. It has been pointed out in Federal cases that, in our dual

system of government, a State in the exercise of its sovereignty has no right to do anything which hampers the instrumentalities of the Federal Government in the discharge of its sovereignty, and *vice versa*. In Dobbins v. Commissioners of Erie County, 16 Peters, 435, the United States Supreme Court was asked to determine whether the salary of a Federal officer was subject to a state tax. The matter was discussed with particular consideration of the fact that the person affected was an instrumentality of the Federal Government. It is said (l. c. 447):

"There is a concurrent right of legislation in the States and the United States, except as both are restrained by the Constitution of the United States. Both are restrained upon this subject by express prohibitions in the Constitution; and the States by such as are necessarily implied when the exercise of the right by a State conflicts with the perfect execution of another sovereign power delegated to the United States. That occurs when taxation by a State acts upon the instruments, emoluments and persons, which the United States may use and employ as necessary and proper means to execute their sovereign powers." And also (l. c. 448):

"If it can be taxed by a State as compensation, will not Congress have to graduate its amount with reference to its reduction by the tax? . . . The execution of a national power by way of compensation to officers can in no way be subordinate to the action of the State Legislature upon the same subject."

In United States v. Bean, County Treasurer, 253 Fed. l. c. 4, it was said: "Every instrumentality lawfully employed by the United States to execute its constitutional laws and to exercise its lawful governmental authority is necessarily exempt from state taxation or interference."

The United States Supreme Court in Metcalf v. Mitchell, supra, relied upon by the relator, stated the rule squarely against relator's contention. Metcalf & Eddy were consulting engineers and professionally employed by states and subdivisions of states with reference to proposed water supply and sewage disposal systems. The question at issue was whether their income thus received from states and municipalities was subject to Federal income tax. It was held that they were not officers or employees of any state or city. They received fees for their services as consulting engineers. They were independent contractors. The court then considered them with reference to whether they were instrumentalities of the State Government, under the rule which prohibits the Federal Government from taxing the instrumentality of a state government, and in like manner the limitation upon the States to tax instrumentalities of the Federal Government. It was pointed out (l. c. 522) that it has

been "repeatedly held that those agencies through which either government immediately and directly exercises its sovereign powers are immune from the taxing power of the other." The court said (l. c. 523):

"But recourse may be had to the reason upon which the rules rests, and which must be the guiding principle to control its operation. Its origin was due to the essential requirement of our constitutional system that the Federal Government must exercise its authority within the territorial limits of the States; and it rests on the conviction that each government, in order that it may administer its affairs within its own sphere, must be left free from undue interference by the other." And again (l. c. 524):

"It is obvious that an agency may be of such a character or so intimately connected with the exercise of a power or the performance of a duty by the one government, that any taxation of it by the other would be such a direct interference with the functions of government itself as to be plainly beyond the taxing power."

It is plain under these rulings and definitions by Federal courts that whether an officer appointed by such court is technically an officer of the Federal Government or not, he discharges a duty necessary in the exercise by the government of its sovereign functions. The court, as a department of government, appoints a receiver as a necessary agency in the administration of the court functions. The emoluments of his office are fixed by the court as the proper compensation for the service which he renders. For the State to tax it would be to reduce that compensation, and to that extent would be an interference with the operation of the Federal court.

Relator cites Evans v. Gore, 253 U. S. 245, and the dissenting opinion of Justice HOLMES, in which Justice BRANDEIS concurred. That case has no relation whatever to the subject we have under consideration here. The question there was whether the salaries of Federal judges were subject to the Federal income tax. Section 1, Article III, of the Federal Constitution provides that their compensation shall not be diminished during their continuance in office. It was held that to tax their salaries as part of their income would be to diminish that compensation. The dissenting opinion was upon the theory that the 16th Amendment to the Federal Constitution which provided that Congress shall have power to tax incomes "from whatever source derived," authorized the taxing of such salaries. There is nothing in either the majority opinion nor in the dissenting opinion which touches the question here.

It is plain that if this case were before a Federal court it would be held that the income of the receiver was not subject to taxation by the State.

Accordingly the writ is quashed. All concur.